**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AGERA ENERGY LLC, *et al.*,[1] | ) | Case No. 19-23802 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### INTERIM ORDER (I) (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (II) (A) APPROVING POSTPETITION SUPPLY FACILITY, (B) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING

Upon the motion (the "Motion") of Agera Energy LLC and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors")[2] in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 503, and 507 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule(s)"), and Rules 2002-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rule(s)"), seeking entry of this interim order (this "Interim Order") and a final order (the "Final Order" and with the Interim Order, the "Financing Orders") *inter alia*:

(i)    authorizing the Debtors' use of Cash Collateral (as defined herein) of the Prepetition Secured Parties (as defined herein);

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Agera Energy LLC (8122); Agera Holdings, LLC (3335); energy.me midwest llc (9484); Aequitas Energy, Inc. (7988); Utility Recovery LLC (4351); and Agera Solutions LLC (8749).  The location of the Debtors' corporate headquarters and the service address for all Debtors is 555 Pleasantville Road, S-107, Briarcliff Manor, NY 10510.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

(ii)       granting adequate protection to each Prepetition Secured Party to protect its

interests in the Prepetition Collateral (each as defined herein), including the Cash Collateral;

(iii)      subject only to, and effective only upon, entry of the Final Order, and to the

extent set forth herein, waiving the Debtors' right to surcharge the Prepetition Collateral or the

Postpetition Collateral pursuant to section 506(c) of the Bankruptcy Code;

(iv)      authorizing certain of the Debtors to enter into (a) that certain Third

Amendment to Preferred Supplier Agreement, dated as of October 4, 2019 (the "Postpetition PSA

Amendment" and together with the hereinafter defined Senior Lien Supply Agreement (as defined

below), as amended by the Postpetition PSA Amendment (as defined below), the "Postpetition

Preferred Supplier Agreement") and (b) that certain Second Amended and Restated Schedule to

the 2002 Master Agreement dated effective as of October 4, 2019, and that certain Base

Confirmation, dated as of October 4, 2019 (collectively, the "Postpetition ISDA Amendments",

and together with the hereinafter defined Senior Lien ISDA Master Agreement (as defined below),

as amended by the Postpetition ISDA Amendments (as defined below), the "Postpetition ISDA

Master Agreement," together with the Postpetition Preferred Supplier Agreement, the

"Postpetition Supply Agreement" and, with other related documents, the "Postpetition Transaction

Documents"), in the forms annexed to this Interim Order as **Exhibits B and C**, with BP Energy

Company (in such capacity, the "Postpetition Secured Party") to obtain postpetition supply of

electricity and natural gas ("Energy") on credit and electricity scheduling services with certain

independent system operators and to provide for the entry into physically- and financially-settled

hedges relating to certain in-the-money contracts to maximize sales proceeds received under the

Stalking Horse APA (as defined in the RSA Term Sheet (as defined below)) or any other asset

purchase agreement relating to the sale of the Debtors' customer contracts, in each case secured by the Postpetition Collateral (as defined below) (the "Postpetition Supply Facility");

(v)    authorizing the Debtors that are a party thereto to execute and deliver related Postpetition Transaction Documents, and to perform such other acts as may be necessary or desirable in connection with the Postpetition Transaction Documents;

(vi)    granting the Postpetition Supply Facility and all obligations owing thereunder and under the Postpetition Transaction Documents to the Postpetition Secured Party (collectively, and including all "Obligations" as described in the Postpetition Supply Agreement, the "Postpetition Obligations") allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases (as defined herein);

(vii)    granting to the Postpetition Secured Party automatically perfected security interests in and liens upon all of the Postpetition Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, which security interests and liens shall be subject to the priorities set forth herein;

(viii)    authorizing the Debtors to pay the principal, interest, fees, expenses, reimbursement obligations, settlement payments, resettlement payments, termination payments and other amounts payable and/or reimbursable under the Postpetition Transaction Documents, as such amounts become due and in accordance with the terms of, the Postpetition Transaction Documents;

(ix)    vacating or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to (i) permit the Debtors and the Prepetition Secured Parties to implement and effectuate the terms and provisions of this Interim Order, and (ii) permit

the Debtors and the Postpetition Secured Party to implement and effectuate the terms and provisions of the Postpetition Transaction Documents, as limited pursuant hereto, and this Interim Order; and

(x)    scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and the entry of a Final Order, and approving the form of notice with respect to the Final Hearing.

The Court (as defined below) having considered the Motion, the *Declaration of Todd Sandford Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No 3], and the evidence submitted or adduced and the, representations and arguments of counsel made at the interim hearing held on October 4, 2019 pursuant to Bankruptcy Rule 4001(b)(2) (the "Interim Hearing"); and after due deliberation and consideration, and for good and sufficient cause appearing therefor,

BASED UPON THE RECORD ESTABLISHED BY THE DEBTORS AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]

A.    *Petition Date*:  On October 4, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court") commencing these Chapter 11 Cases.

B.    *Debtors in Possession*.  The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

C.      _Jurisdiction and Venue_.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      _Committee_.  As of the date hereof, the United States Trustee (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

E.      Findings Regarding Postpetition Supply Facility.

(i)      Request for Postpetition Supply Facility. The Debtors seek authority to obtain the Postpetition Supply Facility on the terms described herein and in the Postpetition Transaction Documents to facilitate their ongoing operations during these Chapter 11 Cases. The Debtors state that, at the Final Hearing, they will seek final approval of the proposed Postpetition Supply Facility pursuant to the Final Order, which they state shall be in form and substance acceptable to the Postpetition Secured Party, and notice of which Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)      Priming of Liens of Prepetition Secured Parties. The priming of the Prepetition Liens (as defined below) of the Prepetition Secured Parties in the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the Postpetition Supply Facility and as further described below, will enable the Debtors to obtain the Postpetition Supply Facility and to continue to operate their businesses for the benefit of the estates and their creditors.

(iii)      Need for Postpetition Supply Facility. The Debtors' need to obtain supply of Energy on credit on an interim basis pursuant to the Postpetition Supply Facility is immediate

5

and critical to enable the Debtors to continue operations and to administer and preserve the value of their estates.  Absent the ability to obtain Energy on credit, the Debtors would be unable to pay for such supply, fund their ongoing operations, satisfy their obligations to their Energy customers, and maximize the value of their assets. The ability of the Debtors to ensure ongoing services to their customers while preserving funds in their estates to otherwise finance their operations requires the availability of supply of Energy on credit from the Postpetition Supply Facility, the absence of which would immediately and irreparably harm the Debtors, their estates, and their creditors, and the possibility for a successful reorganization. The Debtors do not have sufficient available sources of working capital and financing to obtain supply of Energy to provide ongoing services to their customers and fund the operation of their businesses or maintenance of their properties in the ordinary course of business without the Postpetition Supply Facility.

(iv)   No Credit Available on More Favorable Terms. Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain supply of Energy on credit or other types of financing from sources other than the Postpetition Secured Party on terms more favorable than the Postpetition Supply Facility. The Debtors have been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain credit (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Supply of Energy or other financing on a postpetition basis is not otherwise available without granting the Postpetition Secured Party, (x) perfected security interests in and liens on (each, as provided herein) all of the Debtors' existing and after-acquired

6

assets with the priorities set forth in this Interim Order, (y) superpriority claims and liens, and (z) the other protections set forth in this Interim Order.

F.     *Debtors' Stipulations*.     After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest to act on behalf of the Debtors' estates as described in Paragraph 26 herein, the Debtors stipulate and agree that (collectively, the "Debtors' Stipulations"):

(i)     *Senior Lien Transaction*.

(a)     Senior Lien Supply Agreement.     Pursuant to that certain Preferred Supplier Agreement dated effective as of October 2, 2015 (as amended, modified, or supplemented and in effect immediately prior to the Petition Date, the "Senior Lien Supply Agreement," and together with each of the Related Agreements (as defined in the Senior Lien Supply Agreement, the "Senior Lien Transaction Documents"), including that certain ISDA 2002 Master Agreement, dated as of May 5, 2015, together with the Schedule, Credit Support Annex, Power Annex, the Gas Annex and the Renewable Energy Certificates Annex thereto and all confirmations thereunder, as amended by that certain Amendment dated as of October 2, 2015, and as further amended, modified or supplemented and in effect immediately prior to the Petition Date (the "Senior Lien ISDA Master Agreement"), among Agera Energy LLC ("AE"), Aequitas Energy Inc. ("Aequitas"), energy.me midwest LLC ("EME," and together with AE and Aequitas, the "Agera Opco Entities"), BP Energy Company (in such capacity, the "Senior Lien Secured Party" and, together with the Postpetition Secured Party, "BP"), and the other parties thereto, the Senior Lien Secured Party and the Agera Opco Entities transacted for the purchase, sale, and delivery of Energy, Related Electric Power Products, Natural Gas, Related Natural Gas Products, or Financial Products related thereto for the Agera Opco Entities' use in connection with the Approved Retail

Business (each as defined in the Senior Lien Supply Agreement).  As of the Petition Date, the Debtors were truly and justly indebted to the Senior Lien Secured Party pursuant to the Senior Lien Transaction Documents, without defense, counterclaim, or offset of any kind, in an aggregate amount of not less than $135,000,000[4] plus accrued and unpaid interest with respect thereto and any additional fees, costs, and expenses (including any attorneys', financial advisors', and other professionals' fees and expenses that are chargeable or reimbursable under the Senior Lien Transaction Documents) and all other Obligations (as defined in the Senior Lien Supply Agreement) and other obligations under the Related Agreements (as defined in the Senior Lien Supply Agreement) owing under or in connection with the Senior Lien Supply Agreement or the Related Agreements (as defined in the Senior Lien Supply Agreement), including, without limitation, any and all obligations owing to the Senior Lien Secured Party.

(b)     Prepetition Senior Lien Obligations.  The "Prepetition Senior Lien Obligations" shall mean all of the obligations under the Senior Lien Transaction Documents (collectively, the "Senior Lien Debt")", together with any amounts paid, incurred, or accrued prior to the Petition Date in accordance with the Senior Lien Transaction Documents, principal, accrued and unpaid interest, any fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses, and disbursements), settlement payments, termination payments, contingent obligations, reimbursement obligations, "Senior Secured Obligations" (as defined in the Intercreditor Agreement (as defined below)) owed to the Senior Lien Secured Party, indemnification obligations, and other payments, charges, or liabilities of whatever nature, whether or not contingent, whenever arising, due, or owing in respect thereof to the extent and as provided

---

[4] This number represents an estimate as of the date of entry of this Interim Order. The Debtors and BP agree to work in good faith to finalize this amount for the Final Order.

for in the Senior Lien Transaction Documents, including all "Obligations" as defined in the Senior Lien Supply Agreement.

(c)     Senior Lien Collateral.  The Prepetition Senior Lien Obligations are secured by first priority security interests in and liens on (the "Prepetition Senior Liens") the Collateral (the "Prepetition Collateral"), as defined in the Senior Lien Supply Agreement, including substantially all of the Debtors' assets, including accounts receivable and Cash Collateral, and as further evidenced by, *inter alia*, the following:

i.     Pursuant to that certain Pledge and Security Agreement, dated as of October 5, 2015, by and among, AE and Agera Holdings LLC and the Senior Lien Secured Party (the "AE Security Agreement"), AE granted a security interest to the Senior Lien Secured Party in substantially all of its assets.

ii.     Pursuant to that certain Pledge and Security Agreement, dated as of October 2, 2015, by and among, EME and AE and the Senior Lien Secured Party (the "EME Security Agreement"), EME granted a security interest to the Senior Lien Secured Party in substantially all of its assets.

iii.     Pursuant to that certain Pledge and Security Agreement, dated as of October 2, 2015, by and among, Aequitas and Agera Holdings LLC and the Senior Lien Secured Party (the "Aequitas Security Agreement," and collectively with the AE Security Agreement and the EME Security Agreement, the "Prepetition Security Agreements"), Aequitas granted a security interest to the Senior Lien Secured Party in substantially all of its assets.

(ii)     *Junior Lien Transaction*.

(a)     Junior Lien Loan Agreement.   AE and Colorado Bankers Life Insurance Company (including any successor thereto, the "Junior Lien Secured Party," and together with the Senior Lien Secured Party, the "Prepetition Secured Parties") are parties to that certain Junior Loan and Security Agreement (the "Junior Lien Loan Agreement"), dated February 15, 2018, pursuant to which AE obtained a secured credit facility in the amount of $35,000,000.

(b)     Prepetition Junior Lien Obligations.  The "Prepetition Junior Lien Obligations" shall mean all obligations under the Junior Lien Loan Agreement, together with any

amounts paid, incurred, or accrued prior to the Petition Date in accordance with the Junior Lien Loan Agreement, principal, accrued and unpaid interest, any fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses, and disbursements), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing in respect thereof to the extent and as provided for in the Junior Lien Loan Agreement, including all "Obligations" as described in the Junior Lien Loan Agreement. The Prepetition Junior Lien Obligations outstanding as of the Petition Date are in an amount no less than $36,761,159.82, consisting of $35,000,000 in outstanding principal and $1,761,159.82 in accrued, unpaid interest thereon. The "Prepetition Secured Obligations" shall mean the Prepetition Senior Lien Obligations together with the Prepetition Junior Lien Obligations.

(c)     Junior Lien Collateral. The Prepetition Junior Lien Obligations are secured by junior liens (the "Prepetition Junior Liens" and, together with the Prepetition Senior Liens, the "Prepetition Liens") in the Prepetition Collateral, as set forth in the Junior Lien Loan Agreement.

(iii)     *Intercreditor Agreement.* Pursuant to that certain Second Amended and Restated Intercreditor Agreement dated as of February 9, 2018 (as amended, modified, or supplemented and in effect immediately prior to the Petition Date, the "Intercreditor Agreement"), by and among, the Senior Lien Secured Party, certain subordinate lienholders (including the Junior Lien Secured Party, the "Subordinate Lienholders") and certain of the Debtors, the Subordinate Lienholders agreed to subordinate their rights to the Senior Lien Secured Party, including, specifically, with respect to the Senior Lien Secured Party's right to consent to the Debtors' use of Cash Collateral and entry into postpetition financing.

(iv)    *Validity, Perfection, and Priority of Prepetition Senior Liens and Prepetition Senior Lien Obligations*.  Subject to the provisions of Paragraph 26 of this Interim Order, each of the Debtors acknowledges and agrees that: (a) as of the Petition Date, the Prepetition Senior Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (b) as of the Petition Date, the Prepetition Senior Liens are senior in priority over any and all other liens on the Prepetition Collateral; (c) the Prepetition Senior Lien Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (d) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Senior Liens or Prepetition Senior Lien Obligations exist, and no portion of the Prepetition Senior Liens or Prepetition Senior Lien Obligations is subject to any challenge or defense including, without limitation, impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), counterclaims, or cross-claims, pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (e) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including, without limitation, "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including, without limitation, any recharacterization, subordination, avoidance, disgorgement, recovery or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Senior Lien Secured Party or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the transactions under the Senior Lien Transaction Documents, the Prepetition Senior Lien Obligations, or the Prepetition Senior Liens.

(v)    *Satisfaction of Certain Conditions in the Intercreditor Agreement*.  The terms and provisions of this Interim Order and the Postpetition Supply Agreement satisfy the conditions set forth in Section 6.01 of the Intercreditor Agreement.

G.    *Adequate Protection*.  Each of the Prepetition Secured Parties, to protect its interests in the Prepetition Collateral, and in exchange for consenting to the priming liens contained in the Postpetition Supply Facility, is entitled to receive adequate protection for its interests in the Prepetition Collateral from and after the Petition Date, for any diminution in value of its interests in the Prepetition Collateral under applicable law ("Diminution").  Pursuant to sections 361, 363, 364(d)(1), and 507(b) of the Bankruptcy Code, as adequate protection for and in the amount of Diminution, (i) the Senior Lien Secured Party will receive (a) the Senior Adequate Protection Liens (as defined below), (b) the 507(b) Claim (as defined below), and (c) the Adequate Protection Payments (as defined below) and (ii) the Junior Lien Secured Party will receive the Junior Adequate Protection Liens (as defined below), subject to the Intercreditor Agreement in all respects.  The adequate protection provided herein and other benefits and privileges contained herein are necessary to (i) protect the Prepetition Secured Parties' interests in the Prepetition Collateral, and (ii) obtain the consents and agreements contained herein, including that the Adequate Protection Liens are subject and subordinate only to (a) the Carve Out (as defined below), (b) the Postpetition Liens (as defined below), (c) any valid, perfected, and non-avoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date or to any valid and non-avoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b) (the "Permitted Prior Liens"),

and (d) the Permitted Liens (as defined in the Postpetition Supply Agreement) (such carve outs and liens set forth in clauses (a) through (d), the "Senior Carve Outs and Liens").

H.      *Sections 506(c) and 552(b)*.  In light of the agreement by the Prepetition Secured Parties to subordinate their respective Prepetition Liens and Adequate Protection Liens to the Senior Carve Outs and Liens, and to permit the use of their Cash Collateral as set forth herein, and the Postpetition Secured Party's agreement to subordinate its liens and superpriority claims to the Carve Out, the Debtors shall seek a declaration in the Final Order that (i) the Prepetition Secured Parties are entitled to a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (ii) the Prepetition Secured Parties and the Postpetition Secured Party are entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

I.      *Consent by Prepetition Secured Parties*.  The Prepetition Secured Parties have consented to, conditioned on the entry of this Interim Order, (i) the priming liens and other terms of the Postpetition Supply Facility, (ii) the Debtors' proposed use of Cash Collateral, on the terms and conditions set forth in this Interim Order, and (iii) the terms of the adequate protection provided for in this Interim Order, including, without limitation, that the Adequate Protection Liens are subject and subordinate only to the Senior Carve Outs and Liens and the Intercreditor Agreement.

J.      *Necessity of Relief Requested*.  The ability of the Debtors to finance their operations and complete a successful chapter 11 reorganization requires continued use of Cash Collateral and the Postpetition Supply Facility. In the absence of the use of Cash Collateral and the Postpetition Supply Facility, the continued operation of the Debtors' businesses would not be possible and immediate and irreparable harm to the Debtors, their estates, and their creditors would occur.  The Debtors do not have sufficient available sources of working capital and funding to operate their

businesses in the ordinary course of business or to maintain their property without the use of Cash Collateral and the Postpetition Supply Facility. The relief requested in the Motion is therefore necessary for the continued operation of the Debtors' businesses and the preservation of their property. The Senior Lien Secured Party and the Debtors have negotiated at arms' length and in good faith regarding the Debtors' use of Cash Collateral to fund the continued operation of the Debtors' businesses during the Specified Period (as defined below). The Postpetition Secured Party and the Debtors have negotiated at arms' length and in good faith regarding the Debtors' use of the Postpetition Supply Facility to supply natural gas and electricity to the Debtors on credit to facilitate the continued operation of the Debtors' businesses during the Specified Period. Entry of this Interim Order is in the best interests of the Debtors and their estates.

       K.     <u>Good Faith of the Postpetition Secured Party</u>.

       (i)     <u>Willingness to Provide Supply on Credit</u>. The Postpetition Secured Party has indicated a willingness to provide natural gas and electricity to the Debtors on credit subject to (a) the entry of the Financing Orders, (b) approval of the terms and conditions of the Postpetition Supply Facility and the Postpetition Supply Documents, and (c) entry of findings by the Court that such transaction is essential to the Debtors' estates, that the Postpetition Secured Party is extending credit to the Debtors pursuant to the Postpetition Transaction Documents in good faith, and that the Postpetition Secured Party's claims, superpriority claims, security interests and liens, and other protections granted pursuant to this Interim Order and the Postpetition Transaction Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Interim Order or any other order.

(ii)    _Business Judgment and Good Faith Pursuant to Section 364(e)_. The terms and conditions of the Postpetition Supply Facility and the Postpetition Transaction Documents, and the interest and fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The Postpetition Supply Facility was negotiated in good faith and at arm's length among the Debtors and the Postpetition Secured Party. Credit to be extended under the Postpetition Supply Facility shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the Postpetition Secured Party is therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

L.    _Good Cause Shown; Best Interest_.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Bankruptcy Rule 4001-2. Absent entry of this Interim Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed.  This Court concludes that good cause has been shown and entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for a successful reorganization.

M.    _Final Hearing_.  The Debtors will seek final approval of the relief requested in the Motion pursuant to a Final Order at the Final Hearing, notice of which will be provided in accordance with Paragraph 41 of this Interim Order.

N.    _Notice_.  In accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014, and the Local Bankruptcy Rules, notice of the Interim Hearing and the emergency relief requested

in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including the Master Service List (as defined in the *Order (A) Establishing Certain Notice, Case Management, and Administrative Procedures and (B) Granting Related Relief* (the "Case Management Order")) and counsel to the Junior Lien Secured Party. The parties have made reasonable efforts to afford the best notice possible under the circumstances to permit the relief set forth in this Interim Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      Motion Granted.  The Motion is granted on an interim basis as set forth herein, and subject to the terms of this Interim Order, (i) the use of Cash Collateral on an interim basis is authorized and (ii) the Postpetition Supply Facility is authorized and approved.

2.      Objections Overruled.  All objections to the Motion to the extent not withdrawn or resolved are overruled.  This Interim Order shall become effective immediately upon its entry, for cause.

3.      Authorization to Use Cash Collateral.

(a)      Specified Period.  Subject to the terms and conditions of this Interim Order, the Debtors are authorized to use Cash Collateral for the period (the "Specified Period") from the Petition Date through the date which is the earlier to occur of (i) an Event of Default (as defined herein), or (ii) entry of the Final Order, at which time the Specified Period shall be extended through the earliest to occur of (x) an Event of Default occurring after entry of the Final Order, (y) the date on which the Debtors' confirmed plan becomes effective; or (z) to the extent the Court

enters a final order approving the RSA Term Sheet, the date on which the RSA Term Sheet is terminated according to its terms; provided, however, that the Specified Period may be extended with the prior written agreement of the Senior Lien Secured Party.

(b)      Use of Cash Collateral.   Subject to the provisions of this Interim Order, Cash Collateral may be used during the Specified Period by the Debtors to:  (i) finance any and all working capital needs solely of the Debtors and for any other general corporate purposes of the Debtors (and not for or by any other affiliated non-Debtor entities); and (ii) pay related transaction costs, fees, liabilities and expenses (including all professional fees and expenses) and other administration costs incurred in connection with and for the benefit of the Debtors' chapter 11 cases (including Adequate Protection Payments (defined below)).

(c)      Consent to Priming Liens.   Subject to the terms of this Interim Order, the Prepetition Secured Parties are deemed to have consented to the imposition of the priming liens contained in the Postpetition Supply Agreement.

4.      Adequate Protection.   The Prepetition Secured Parties are entitled to, and upon entry of this Interim Order the Prepetition Secured Parties are granted, pursuant to sections 361, 363(c), and 364 of the Bankruptcy Code, the following adequate protection (the "Adequate Protection") of their respective interests in the Prepetition Collateral (including Cash Collateral):

(a)      Senior Lien Secured Party's Adequate Protection Liens.   As adequate protection of the Senior Lien Secured Party's interest in the Prepetition Collateral for consenting to the priming of its Prepetition Liens by the Postpetition Supply Facility and in the amount of the Diminution, pursuant to section 361 and 363(e) of the Bankruptcy Code, the Debtors are authorized to, and as of the entry of this Interim Order, are deemed to have granted, to the Senior Lien Secured Party, additional and replacement continuing valid, binding, enforceable, non-

avoidable, and automatically perfected postpetition interests in and liens on the Postpetition

Collateral (as defined below), whether now owned or hereafter acquired or existing wherever

located, of each Debtor and Debtor's estates (as created pursuant to section 541(a) of the

Bankruptcy Code), including cash, and subject to the Intercreditor Agreement in all respects (the

"Senior Adequate Protection Liens"), as follows:

    i.    Lien on Unencumbered Property. Subject to the Postpetition Liens and the Carve Out, a valid, binding, continuing, enforceable, fully- perfected first priority senior security interest in and lien upon all prepetition and postpetition property of the Debtors, junior only to the Postpetition Liens and the Carve Out, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is Unencumbered Property (as defined below). Notwithstanding the prior sentence, Unencumbered Property shall in any event exclude Avoidance Actions (as defined below) and the proceeds thereof, provided the Debtors shall seek a declaration in the Final Order that the foregoing lien should extend to any proceeds or property recovered, unencumbered, or otherwise the subject of successful Avoidance Actions, whether by judgment, settlement, or otherwise.

    ii.    Replacement Liens of Senior Lien Secured Party. Subject and junior to the Senior Carve Outs and Liens, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all prepetition and postpetition property of the Debtors, junior only to the Postpetition Liens and the Senior Carve Outs and Liens, whether existing on the Petition Date or thereafter acquired, that is subject to valid, perfected, and non-avoidable liens presently held by any of the Prepetition Secured Parties.

    iii.    Liens Junior to Certain Other Liens. Subject to the Senior Carve Outs and Liens, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all prepetition and postpetition property of the Debtors (other than the property described in clause (a) or (b) of this paragraph, as to which the liens and security interests will be as described in such clauses) junior only to the Postpetition Liens and the Senior Carve Outs and Liens.

    iv.    Liens Senior to Certain Other Liens. Except for the Senior Carve Outs and Liens, the Senior Adequate Protection Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other domestic or foreign governmental unit

(including any regulatory body), commission, board, or court for any liability of the Debtors.

(b)      Junior Lien Secured Party's Adequate Protection Liens.  As adequate protection of the Junior Lien Secured Party's interest in the Prepetition Collateral for consenting to the priming of its Prepetition Liens by the Postpetition Supply Facility in the amount of Diminution , pursuant to section 361 and 363(e) of the Bankruptcy Code, the Debtors are authorized to, and as of the entry of this Interim Order, are deemed to have granted, to the Junior Lien Secured Party, additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected postpetition interests in and liens on the Postpetition Collateral (as defined below), whether now owned or hereafter acquired or existing wherever located, of each Debtor and Debtor's estates (as created pursuant to section 541(a) of the Bankruptcy Code), including cash, and subject to the Intercreditor Agreement in all respects (the "Junior Adequate Protection Liens," and collectively with the Senior Adequate Protection Liens, the "Adequate Protection Liens"), as follows:

i.      Lien on Unencumbered Property. Subject to the Senior Adequate Protection Liens, the Postpetition Liens, and the Carve Out, a valid, binding, continuing, enforceable, fully- perfected security interest in and lien upon all prepetition and postpetition property of the Debtors, junior only to the Senior Adequate Protection Liens, the Postpetition Liens, and the Carve Out, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is Unencumbered Property (as defined below). Notwithstanding the prior sentence, Unencumbered Property shall in any event exclude Avoidance Actions (as defined below) and the proceeds thereof, provided the Debtors shall seek a declaration in the Final Order that the foregoing lien should extend to any proceeds or property recovered, unencumbered, or otherwise the subject of successful Avoidance Actions, whether by judgment, settlement, or otherwise.

ii.      Replacement Liens of Junior Lien Secured Party. Subject and junior to the Prepetition Senior Liens, the Senior Adequate Protection Liens, and the Senior Carve Outs and Liens, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all prepetition and postpetition property of the Debtors, junior only to the Prepetition Senior Liens, the Senior Adequate Protection Liens, and the Senior Carve Outs and

Liens, whether existing on the Petition Date or thereafter acquired, that is subject to valid, perfected, and non-avoidable liens presently held by any of the Prepetition Secured Parties.

iii.    <u>Liens Junior to Certain Other Liens</u>. Subject to the Prepetition Senior Liens, the Senior Adequate Protection Liens, and the Senior Carve Outs and Liens, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all prepetition and postpetition property of the Debtors (other than the property described in clause (a) or (b) of this paragraph, as to which the liens and security interests will be as described in such clauses) junior only to the Prepetition Senior Liens, the Senior Adequate Protection Liens, and the Senior Carve Outs and Liens.

iv.    <u>Liens Senior to Certain Other Liens</u>. Except for the Prepetition Senior Liens, the Senior Adequate Protection Liens, and the Senior Carve Outs and Liens, the Junior Adequate Protection Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other domestic or foreign governmental unit (including any regulatory body), commission, board, or court for any liability of the Debtors.

The Adequate Protection Liens shall be enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in these Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, "<u>Successor Cases</u>").  Except as provided herein, including, without limitation, the Senior Carve Outs and Liens and the subordination of the Junior Adequate Protection Liens, and subject to the Intercreditor Agreement in all respects, the Adequate Protection Liens shall not be made subject to or <u>pari passu</u> with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases, and the Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in any of these Chapter 11 Cases or any Successor Cases, or upon the dismissal of any of these Chapter 11 Cases or Successor Cases.  The Adequate Protection Liens shall not be subject

to sections 510, 549, or 550 of the Bankruptcy Code and the Debtors shall seek a declaration in the Final Order that the Adequate Protection Liens shall not be subject to section 506(c) of the Bankruptcy Code. The Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment, or avoidance, for all purposes in these Chapter 11 Cases and any Successor Cases, and subject to the Intercreditor Agreement in all respects.

(c) Adequate Protection Superpriority Claim. To the extent of any Diminution of the Senior Lien Secured Party in the Prepetition Collateral (if any), the Senior Lien Secured Party shall be granted, subject to the payment of the Carve Out (which, to the extent applicable, shall include any Buyer Expense Reimbursement and/or Termination Fee (each as defined in the Stalking Horse APA) payable under the Stalking Horse APA and the Bidding Procedures Order (as defined in the Stalking Horse APA)), an allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, immediately junior to the Postpetition Superpriority Claims (the "507(b) Claim"), which 507(b) Claim shall be an allowed claim against each of the Debtors (jointly and severally), with priority (except as otherwise provided herein) over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment. From the date of entry of this Interim Order, the 507(b) Claim shall be payable and have recourse to all pre- and post-petition property of the Debtors, including any unencumbered assets (excluding

Avoidance Actions and the proceeds thereof), subject and subordinate only to the Carve Out and the Postpetition Superpriority Claims.  The Debtors shall seek a declaration in the Final Order that the 507(b) Claim shall be payable and have recourse to the proceeds of the Avoidance Actions. The Senior Lien Secured Party shall not receive or retain any payments, property, or other amounts in respect of the 507(b) Claim granted hereunder unless and until all of the Postpetition Obligations have been indefeasibly paid in full, in cash, and the Postpetition Supply Facility has been terminated.

(d)     Fees and Expenses.   The Debtors are authorized to pay as Adequate Protection, all reasonable and documented fees and expenses incurred by the Senior Lien Secured Party, as described in more detail in Paragraph 24 below.

(e)     Adequate Protection Payments.   The Senior Lien Secured Party shall receive from the Debtors (i) Adequate Protection Cash Payments (as defined below), and (ii) Adequate Protection Fee Payments (as defined below) (collectively, the "Senior Lien Adequate Protection Payments"), which shall be applied only to its allowed secured claim in the Chapter 11 Cases.

(f)     Budget and Reporting.

i.      The Debtors may use Cash Collateral that is currently in or that in the future will be deposited into the Deposit Accounts and Collateral Accounts (as applicable), subject to the budget attached to this Interim Order as **Exhibit A** (the "Approved Budget") and the Permitted Variances (as defined below); *provided that*, except as otherwise expressly provided herein, and for the avoidance of doubt, the Court is not approving the payments made under any individual line-item of the Approved Budget.[5]

ii.     The Debtors shall deliver variance reports to BP on a weekly basis (to be reported by Thursday at 12:00 p.m. (EST)) beginning on the first Thursday

---

[5] Notwithstanding the foregoing, and anything to the contrary contained in this Interim Order, to the extent that the Debtors are required to pay the Buyer (as defined in the Stalking Horse APA) the Buyer Expense Reimbursement and/or the Termination Fee in accordance with the Bidding Procedures Order, such payment(s) shall be authorized expenditures by the Debtors and only to the extent such payment(s) are approved by the Court upon notice and hearing.

after the date of entry of this Interim Order in a form satisfactory to BP, comparing: (x) total receipts for all prior weeks to total receipts for such periods as set forth in the Approved Budget, on a cumulative and on a line-by-line basis; (y) total disbursements for all prior weeks to total disbursements for such periods as set forth in the Approved Budget, on a cumulative basis and on a line-by-line basis, together with a summary of the Permitted Variances for such periods and explaining in reasonable detail all material variances (each such report, a "Budget Variance Report").

iii.    Every five (5) weeks (beginning with the fifth (5th) full week after the date of entry of this Interim Order), on the fourth business day of such week, the Debtors shall deliver to BP and their advisors a new 13-week cash flow forecast setting forth all projected cash receipts and cash disbursements on a weekly basis, which such new 13-week cash flow must be acceptable to BP and, upon such written approval (which may be obtained via electronic mail), such new 13-week cash flow shall become the new "Approved Budget." Failure of the Postpetition Secured Party, the Senior Lien Secured Party and the Debtors to agree to an updated Budget within three (3) business days after the Debtors' delivery of the updated Budget shall constitute an Event of Default (as defined herein), and BP shall have all rights provided herein, including in Paragraph 20 of this Interim Order.

iv.    Actual cash disbursements made by the Debtors may not exceed the amounts set forth in the Approved Budget by more than (x) ten percent (10%) on an aggregate cumulative basis or (y) (1) fifteen percent (15%) for any single line item in any week that is a Non-SG&A Line Item or (2) ten percent (10%) for any single item in any week that is an SG&A Line Item (collectively, the "Permitted Variances"); *provided that*, except as otherwise expressly provided herein, and for the avoidance of doubt, the Court is not approving the payments made under any individual line-item of the Approved Budget. For purposes hereof, the "SG&A Line Items" means the following line items in the Approved Budget: "Wages and Benefits," "Broker Commissions," "Retention Payments (KEIP and KERP)" (only to the extent such payments are approved by the Court upon notice and hearing), "Professional and US Trustee Fees" (excluding BP Professional Fees) and "Other SG&A." The "Non-SG&A Line Items" means the following line items in the Approved Budget: "BP Energy/BP Gas/ISOs/3rd Party Gas/Ancillaries," "Sales Tax/SBOs/TDSP" and "RECs/Customer Refunds.". Unused amounts set forth in the Approved Budget for any disbursement line item may be carried forward and used to fund such line item in any subsequent week.

v.    On Monday, Wednesday and Friday of each week (each, a "Reporting Day"), the Debtors will deliver to BP a report of the AR Amount (the "AR Report") in such form as is reasonably acceptable to BP and with such supporting information as is reasonably requested by BP. The Debtors agree to cooperate fully with BP in providing prompt access to any

information system that the Postpetition Secured Party or the Senior Lien Secured Party determines is reasonably necessary to verify any information contained in any AR Report.

vi.   During the Specified Period, the Debtors shall not at any time permit the Net AP Value to be higher than the Maximum Amount.  The "Maximum Amount" means $17,500,000 unless otherwise agreed by the Postpetition Secured Party, the Senior Lien Secured Party, and the Debtors, each in their sole discretion in accordance herewith.  The Maximum Amount shall be tested on a weekly basis on Thursdays for prior day ending balances (each a "Weekly Reporting Date").  The "Net AP Value" means the amount, if any, by which (i) the AP Amount exceeds (ii) the AR Amount.  The "AR Amount" means, as of any date of determination, the aggregate value of all accounts receivable owed to the Debtors by customers as of such date, plus all amounts that have accrued but have not yet become due as of such date (*i.e.* unbilled amounts) in respect of energy or gas delivered by the Debtors to or procured by the Debtors on behalf of a customer, in each case to the extent such receivable meets the following requirements:   (i)  such receivable is subject to no liens other than Permitted Liens, (ii) such receivable excludes any portion related to gross receipts or sales taxes or any other amount that may be deducted by a utility before payment to a Debtor, (iii) no more than 25% of such receivable is more than sixty (60) days past due (for the avoidance of doubt, the preceding requirement shall not apply to any such receivables under a purchase of receivables or consolidated billing program of the applicable utility or local distribution company in which the Debtors participate, solely to the extent that such Debtor is not in breach of any of its obligations under such purchase of receivables or consolidated billing program (or any other agreement between any Debtor and the applicable utility or local distribution company or tariff of the applicable utility or local distribution company) except for *ipso facto* breaches directly caused by the filing of the Chapter 11 Cases), (iv) such receivable does not have a payment date that is more than sixty (60) days after the date of invoice, (v) at the time of the sale giving rise to the receivable, the payor of such receivable was not in payment default for more than sixty (60) days to any Debtor, (vi) the payor of such receivable is not an Affiliate of any Debtor, and (vii) such receivable accrued in the ordinary course of business by delivery of energy or gas by or on behalf of a Debtor.   The AR Amount also includes any cash in the Collateral Accounts or Deposit Accounts, cash posted to the ISOs, and BP-approved cash posted to the ISOs, utilities, pipelines, sureties, and regulatory bodies after September 1, 2019.  The "AP Amount" means, as of any date of determination, all amounts owing to BP by any Debtor as of such date (other than (x) the portion of the Close-out Amount under the Senior Lien ISDA Master Agreement relating to the marked-to-market value of the transactions that have been terminated under the Senior Lien ISDA Master Agreement, but including all amounts under the Senior Lien ISDA Master Agreement relating to power or gas delivered by BP to or procured by BP

on behalf of any Debtors that have not been paid by the Debtors (whether the applicable transactions were physically- or financially-settled) and other amounts that were deferred under the Senior Lien ISDA Master Agreement or the Senior Lien Supply Agreement and that have not yet been paid, and (y) any credit support or reimbursement obligations in respect of credit support provided or caused to be provided by BP on any Debtor's behalf) and all amounts that have accrued but have not yet become due as of such date in respect of energy or gas delivered by BP to or procured by BP on behalf of the Debtors (whether the applicable transactions were physically- or financially-settled).  BP will determine the AP Amount in accordance with its internal practices and policies.

vii.    No Debtor shall create a reserve account or accumulate or hold any cash outside of the Deposit Accounts or Collateral Accounts, other than deposit accounts established for the sole purpose of making payments in respect of payroll, taxes or other ongoing expenses of the Debtors' retail business (such accounts, the "Operating Accounts").  All revenues and other amounts received by any Debtor must be deposited into the Collateral Accounts or Deposit Accounts within one (1) business day of receipt. No Debtor shall transfer any funds from a Collateral Account or a Deposit Account to any Operating Account, or otherwise permit funds to be on deposit in any Operating Account, at any time in an amount that exceeds the amount required to fund liabilities of the Debtors that are scheduled to become due and payable within the immediately following seven (7) days in accordance with the Approved Budget, subject to the Permitted Variance, plus any un-cleared postpetition checks, plus $200,000.

viii.    As promptly as practicable, the Debtors shall provide BP with copies of all notices of non-compliance and other notices received by any Debtor relating to the failure of any Debtor to comply with any State renewable portfolio standards requirements.

(g)    Access to Records.  Without limiting any rights of the Senior Lien Secured Party under the Senior Lien Transaction Documents or the Postpetition Secured Party under the Postpetition Transaction Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Senior Lien Secured Party and the Postpetition Secured Party to have reasonable access to (i) inspect the Debtors' properties, and (ii) all information (including historical information and the Debtors' books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management of the Debtors and other company advisors (during normal business hours),

and the Senior Lien Secured Party and the Postpetition Secured Party shall be provided with access to all information it shall reasonably request, subject to the restrictions of any confidentiality agreement with or other contractual legal or fiduciary obligation of confidentiality to any of the Debtors with respect to such information.

(h)    Right to Seek Additional Adequate Protection.    This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of any Prepetition Secured Party to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request; *provided that* such request made by the Junior Lien Secured Party must also comply with the Intercreditor Agreement.

5.    Credit Bid.    The Debtors shall seek a declaration in the Final Order that, subject to Bankruptcy Code section 363(k), the Postpetition Secured Party and the Senior Lien Secured Party shall each have the right to credit bid all or any portion of their respective secured claims in connection with a sale of the Debtors' assets under section 363 of the Bankruptcy Code or under a chapter 11 plan of reorganization for any or all of the Debtors constituting their collateral.    For purposes of clarity, however, the Postpetition Secured Party and the Senior Lien Secured Party have actively participated in negotiation of and support the Debtors' entry into the Stalking Horse APA.

6.    Authorization of the Postpetition Supply Facility.    The Debtors are expressly and immediately authorized and empowered to execute and deliver the Postpetition Transaction Documents and to incur and to perform the Postpetition Obligations in accordance with, and subject to, the terms of this Interim Order and the Postpetition Transaction Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the Postpetition Supply Facility and the creation and perfection of the

Postpetition Liens described in, and provided for by, this Interim Order and the Postpetition Transaction Documents. The Debtors are hereby authorized to pay, in accordance with this Interim Order, the principal, interest, fees, expenses, reimbursement obligations, and other amounts payable or reimbursable by the Debtors described in the Postpetition Transaction Documents and all other documents comprising the Postpetition Supply Facility as such become due and without need to obtain further Court approval. All collections and proceeds, whether ordinary course or otherwise, will be deposited and applied as required by this Interim Order and the Postpetition Transaction Documents. Upon execution and delivery, the Postpetition Transaction Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

7.      <u>Authorization to Incur Debt</u>. Until the earliest to occur of (a) the transfer of all accounts associated with the Debtors' customer contracts to the successful bidder or other third party supplier or the return of such accounts to the applicable utility or local distribution company, (b) the expiry of the Specified Period, and (c) the Final Assignment Date (as defined in the Stalking Horse APA) (the "<u>Postpetition Termination Date</u>"), and subject to the terms and conditions set forth in the Postpetition Transaction Documents, the Postpetition Supply Facility, and this Interim Order, and to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized to obtain supply of Energy on credit under the Postpetition Supply Facility pursuant to the Approved Budget.

8.      <u>Postpetition Obligations</u>. The Postpetition Obligations shall be enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in the Chapter 11 Cases, and any Successor Cases. Upon the Postpetition Termination Date, (a) the Postpetition Secured Party shall have no further obligation to perform under the

Postpetition Transaction Documents, and (b) any outstanding Postpetition Obligations shall be due and payable, without notice or demand, to the extent provided for in the Postpetition Supply Agreement.

9.    <u>Postpetition Payments</u>. Subject to the Approved Budget and the Permitted Variances, the Debtors shall make the following payments to BP in cash in the following amounts:

(a)    payment of invoices relating to postpetition supply or hedges of natural gas and power (whether physically- or financially-settled) under the Postpetition Supply Facility (including all interest relating thereto), in the amounts set forth in the invoices and otherwise in accordance with the terms of the Postpetition ISDA Master Agreement; and

(b)    payment of adequate protection on all prepetition obligations of the Debtors under the Senior Lien Transaction Documents, whether in respect of power, gas or otherwise, on a bi-weekly basis, beginning on October 18, 2019, in an amount equal to the amount of funds remaining in the Collateral Accounts and Deposit Accounts after giving effect to payments required to be made under clause (a) above that exceeds $10,000,000 until December 1, 2019, $8,000,000 until January 1, 2020, $6,000,000 until February 1, 2020, and $3,000,000 throughout the remainder of the Support Period (collectively, the "<u>Excess Amount Thresholds</u>") (which payments shall be applied first to payment of the invoices relating to postpetition power supply under the Postpetition Supply Facility, second to the payment of accrued interest on the Prepetition Senior Lien Obligations, subject to reallocation under Bankruptcy Code sections 506(a) and/or (b), at the applicable rate under the applicable Transaction Document, and third to the payment of the remaining Prepetition Senior Lien Obligations).  The Excess Amount Thresholds may be revised from time to time, subject to agreement by BP and the Agera Parties, each in their sole discretion in accordance herewith.  For the avoidance of doubt, the Excess Amount Thresholds shall not be

less than the projected Carve Out (as defined below) levels at any time.  Payments made to the

Senior Lien Secured Party hereunder on account of the Prepetition Senior Lien Obligations shall

be referred to as the "Adequate Protection Cash Payments".

10.    Postpetition Liens. To secure the Postpetition Obligations, effective immediately

upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d)

of the Bankruptcy Code, the Postpetition Secured Party is hereby granted the following continuing,

valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition

security interests and liens (all property identified in clauses (a), (b), and (c) below being

collectively referred to as the "Postpetition Collateral"), subject to the payment of the Carve Out

(all such liens and security interests granted to the Postpetition Secured Party, pursuant to this

Interim Order and the Postpetition Transaction Documents, the "Postpetition Liens"):

(a)    First Lien on Cash Balances and Unencumbered Property. Pursuant to

section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-

perfected first priority senior security interest in and lien upon all prepetition and postpetition

property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as

of the Petition Date, is not subject to valid, perfected, and non-avoidable liens, including, without

limitation, all real and personal property, inventory, plant, fixtures, machinery, equipment, cash,

any investment of such cash, accounts receivable, other rights to payment whether arising before

or after the Petition Date (including, without limitation, postpetition intercompany claims of the

Debtors), deposit accounts, investment property, supporting obligations, minerals, oil, gas, and as-

extracted collateral, causes of action (including those arising under section 549 of the Bankruptcy

Code and any related action under section 550 of the Bankruptcy Code, but excluding Avoidance

Actions and the proceeds thereof), royalty interests, chattel paper, contracts, general intangibles,

documents, instruments, interests in leaseholds, letter of credit rights, patents, copyrights, trademarks, trade names, other intellectual property, capital stock and stock equivalents of subsidiaries, books and records pertaining to the foregoing, and to the extent not otherwise included, all proceeds, products, offspring, and profits of any and all of the foregoing (the "Unencumbered Property"), subject only to the Carve Out. Notwithstanding the prior sentence, the Postpetition Collateral shall exclude the Debtors' claims and causes of action under chapter 5 of the Bankruptcy Code (other than causes of action arising under section 549 of the Bankruptcy Code and any related action under section 550 of the Bankruptcy Code), or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions") and the proceeds thereof; provided that the Debtors shall seek a declaration in the Final Order providing that, from and after entry of the Final Order, the Postpetition Liens shall encumber any proceeds or property recovered, unencumbered, or otherwise the subject of successful Avoidance Actions, whether by judgment, settlement, or otherwise.

(b)     Priming of Liens of Prepetition Secured Parties. Pursuant to section 364(d)(l) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all prepetition and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that is subject to valid, perfected, and non-avoidable liens presently held by any of the Prepetition Secured Parties, subject only to the Carve Out and excluding Avoidance Actions and the proceeds thereof.  Such security interests and liens shall be senior in all respects to the interests in such property of any of the Prepetition Secured Parties arising from current and future liens of any of the Prepetition Secured Parties (including, without limitation, Adequate Protection Liens), but shall not be senior to any Permitted Prior Liens.

(c)     Liens Junior to Certain Other Liens. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all prepetition and postpetition property of the Debtors (other than the property described in clause (a) or (b) of this paragraph, as to which the liens and security interests in favor of the Postpetition Secured Party will be as described in such clauses), whether existing on the Petition Date or thereafter acquired, that is subject to Permitted Prior Liens (in each case, other than the Adequate Protection Liens), which security interests and liens in favor of the Postpetition Secured Party are junior to such Permitted Prior Liens, subject to the Carve Out and excluding Avoidance Actions and the proceeds thereof.

(d)     Liens Senior to Certain Other Liens. Except for Permitted Liens, the Postpetition Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other domestic or foreign governmental unit (including any regulatory body), commission, board, or court for any liability of the Debtors.

11.     Postpetition Lien Priority. The Postpetition Liens are valid, binding, continuing, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the Postpetition Collateral, except that the Postpetition Liens shall be junior only to the Senior Carve Outs and Liens. Pursuant to section 364(d) of the Bankruptcy Code, the Postpetition Liens shall be senior to the Prepetition Senior Liens and the Prepetition Junior Liens of the Prepetition Secured Parties in the Prepetition Collateral and the Adequate Protection Liens. For purposes of this Interim Order, it shall be an Event of Default if,

31

other than as set forth herein, the Postpetition Liens shall be made subject to, or pari passu with, any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be pari passu with or senior to the Postpetition Liens.

12.    <u>Postpetition Superpriority Claims</u>. Upon entry of this Interim Order, the Postpetition Secured Party is hereby granted, pursuant to section 364(c)(l) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases (collectively, the "<u>Postpetition Superpriority Claims</u>") for all Postpetition Obligations: (i) except as set forth herein, with priority over any and all administrative expense claims, diminution claims, unsecured claims, and all other claims against the Debtors or their estates in any of the Chapter 11 Cases and any Successor Cases, existing on the Petition Date or thereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject only to, and effective only upon entry of, the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed claims shall be payable from, and have recourse to, all prepetition and postpetition property of the Debtors and all proceeds thereof; and (ii) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. Notwithstanding

the foregoing, the Postpetition Superpriority Claims shall be subject only to the payment of the Carve Out. Notwithstanding anything to the contrary herein, the Postpetition Superpriority Claims shall not be payable from Avoidance Action proceeds.

13. <u>No Obligation to Extend Credit</u>. The Postpetition Secured Party shall have no obligation to extend any credit under the Postpetition Transaction Documents, unless all of the conditions precedent to the making of such extension of credit under the Postpetition Transaction Documents and this Interim Order have been satisfied in full or waived in accordance with the terms of the Postpetition Transaction Documents.

14. <u>Amendments to the Postpetition Transaction Documents</u>. The Debtors are hereby authorized to implement, in accordance with the terms of the Postpetition Transaction Documents, (a) any nonmaterial modifications of the Postpetition Transaction Documents without further order of the Court, and (b) any other modifications to the Postpetition Transaction Documents, <u>provided</u>, <u>however</u>, that subject to entry of the Final Order, notice of any material modification or amendment to the Postpetition Transaction Documents shall be provided to counsel for any Committee and the U.S. Trustee, each of whom shall have five (5) business days from the date of such notice within which to object, in writing, to such modification or amendment. Notwithstanding anything to the contrary herein, the Debtors and BP may agree to modify the Maximum Amount effective upon only two (2) business days' notice to counsel for any Committee and the U.S. Trustee. If the Committee or the U.S. Trustee timely objects to any material modification or amendment to the Postpetition Transaction Documents, such modification or amendment shall only be permitted pursuant to an order of the Court. The foregoing shall be without prejudice to the Debtors' right to seek approval from the Court of a material modification on an expedited basis.

15.     <u>Modification of the Automatic Stay</u>. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to (a) permit the Debtors to grant the Postpetition Liens, the Postpetition Superpriority Claims, the Adequate Protection Liens and the 507(b) Claim; (b) permit the Debtors to perform such acts as the Postpetition Secured Party or the Senior Lien Secured Party may request in its sole discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Postpetition Secured Party under the Postpetition Transaction Documents, the Postpetition Supply Facility, and this Interim Order, and the Senior Lien Secured Party under this Interim Order; and (d) authorize the Debtors to pay, and the Senior Lien Secured Party and the Postpetition Secured Party to retain and apply, payments made in accordance with the terms of this Interim Order.

16.     <u>Perfection of Adequate Protection Liens and Postpetition Liens</u>. This Interim Order shall be sufficient and conclusive evidence of the granting, attachment, validity, perfection, and priority of all liens granted herein, including the Adequate Protection Liens and the Postpetition Liens, without the necessity of filing or recording any financing statement, patent filing, trademark filing, copyright filing, fixture filing, mortgage, notice of lien, or other instrument or document, which may otherwise be required under the law or regulation of any jurisdiction, or the taking possession of, or control over, assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, securities account control agreement, or other similar agreement) to grant, attach, validate, or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens and the Postpetition Liens, or to entitle the Senior Lien Secured Party and the Postpetition Secured Party to the priorities granted herein. Notwithstanding the foregoing, the Senior Lien Secured Party and the Postpetition Secured

Party are authorized, but not required, to file, as each in its sole discretion deems necessary, such financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Adequate Protection Liens and the Postpetition Liens, and all such financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of lien, and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the Adequate Protection Liens and the Postpetition Liens. The Debtors are authorized to execute and deliver promptly upon demand to the Senior Lien Secured Party and the Postpetition Secured Party all such financing statements, mortgages, notices, and other documents and information as the Senior Lien Secured Party and the Postpetition Secured Party may reasonably request. The Senior Lien Secured Party and the Postpetition Secured Party, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to, or in lieu of, such financing statements, notices of lien, or similar instrument. In furtherance of the foregoing and without further approval of the Court, each Debtor is (a) authorized to do and perform all acts to make, execute, and deliver all instruments and documents and provide all information and (b) authorized to pay all fees that may be reasonably required or necessary for the Debtors' performance hereunder.

17.    <u>Proceeds of Subsequent Financing</u>. If the Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in the Chapter 11 Cases or any Successor Cases, shall obtain credit or incur debt pursuant to section 364(b), 364(c), or 364(d) of the Bankruptcy Code or in violation of the Postpetition Transaction Documents at any time prior

to such time as the Postpetition Obligations have been indefeasibly paid in full, in cash, and the Postpetition Supply Facility has been terminated, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any Postpetition Collateral, then cash proceeds derived from such credit or debt shall be used to the extent necessary to indefeasibly repay in full, in cash, the Postpetition Obligations.

18.    <u>Maintenance of Postpetition Collateral and Prepetition Collateral</u>. Until such time as all Postpetition Obligations have been indefeasibly paid in full, in cash, and the Postpetition Supply Facility has been terminated, and the Prepetition Obligations have been indefeasibly paid in full, in cash, and use of Cash Collateral has been terminated, the Debtors shall (a) maintain and insure the Postpetition Collateral and the Prepetition Collateral in amounts, for the risks, and by the entities as required under the Postpetition Transaction Documents and the Senior Lien Transaction Documents and (b) maintain the cash management system in effect as of the Petition Date consistent with the "first day" order authorizing the Debtors to, among other things, continue using their existing cash management system, as modified by any order that may be entered by the Court, or as otherwise required by the Postpetition Transaction Documents and the Senior Lien Transaction Documents.

19.    <u>Disposition of Postpetition Collateral; Rights of Postpetition Secured Party</u>. The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Postpetition Collateral other than as permitted in the Postpetition Transaction Documents (and no consent shall be implied from any action, inaction, or acquiescence by the Postpetition Secured Party, or an order of the Court), except as provided under a final order of this Court providing for a sale under Bankruptcy Code sections 363(b) and (f); provided that the Debtors may release liens

on the Postpetition Collateral solely to the extent permitted by the Postpetition Transaction Documents.

20.     Events of Default.  The occurrence and continuance of any of the following events, unless waived in writing by the Senior Lien Secured Party and the Postpetition Secured Party, shall constitute an event of default (collectively, the "Events of Default"):

(a)     the Debtors shall fail to comply with an Approved Budget, subject to the Permitted Variance;

(b)     the Debtors shall fail to comply with, satisfy, or achieve any of the following dates and deadlines (the "Milestones"), each subject to the Court's calendar:

i.      no later than fourteen (14) calendar days following the Petition Date, the Debtors shall have obtained entry of an order approving bidding procedures and stalking horse protections in connection with the in-court sale (the "In-Court Sale")

ii.     no later than thirty-one (31) calendar days following the Petition Date, the Debtors shall have obtained entry of the Final Order;

iii.    no later than thirty-one (31) calendar days following the Petition Date, the Debtors shall have held an auction in connection with the In-Court Sale, if applicable;

iv.     no later than thirty-two (32) calendar days following the Petition Date, the Debtors shall have obtained entry of an order by the Court approving the In-Court Sale;

v.      no later than sixty (60) calendar days following the Petition Date, the closing of the In-Court Sale shall have occurred;

vi.     no later than one-hundred thirty-five (135) calendar days following the Petition Date, the Debtors shall have filed a motion seeking the combined approval of the disclosure statement and confirmation of the Debtors' Chapter 11 plan of liquidation that is consistent with the RSA Term Sheet (the "Plan"); and

vii.    no later than one-hundred eighty (180) calendar days following the Petition Date, the Debtors shall not have obtained entry of an order approving the disclosure statement and an order confirming the Plan.

(c)      the Debtors shall fail to provide the Senior Lien Secured Party or the Postpetition Secured Party with reasonable access to the Debtors' books, records, and management;

(d)      the Debtors shall file any pleading seeking authority to use cash collateral or to secure postpetition financing from any party other than the Senior Lien Secured Party or the Postpetition Secured Party, including financing that provides for super-priority claims or priming liens on any Prepetition Collateral or Postpetition Collateral, in each case without the Postpetition Secured Party's and the Senior Lien Secured Party's consent in writing in their sole and absolute discretion;

(e)      the Court's confirmation of a competing plan or approval of any transaction for the sale or disposition of any of the Debtors' material assets that is inconsistent with the terms of the RSA Term Sheet;

(f)      to the extent the court enters a final order approving the RSA Term Sheet, the termination of the RSA Term Sheet in accordance with its terms;

(g)      the Debtors' failure to comply with any material provision of any order entered by the Court or an event of default exists under any order entered by the Court;

(h)      the occurrence of an event of default or termination event (however defined) under the Postpetition Transaction Documents that has not been waived or cured in accordance with the Postpetition Transaction Documents;

(i)      the Debtors shall file any of the Definitive Documents (as defined in the RSA Term Sheet) in the Chapter 11 Cases with terms and conditions materially inconsistent with the RSA Term Sheet;

(j)     dismissal of these Chapter 11 Cases or conversion of these Chapter 11 Cases to chapter 7 cases, or appointment of a trustee, receiver, interim receiver, or manager, or appointment of a responsible officer or examiner with enlarged powers in any of these Chapter 11 Cases (having powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code);

(k)     the Debtors file for approval of or otherwise support any plan, sale, or other transaction that is inconsistent with the RSA Term Sheet;

(l)     the Stalking Horse APA has been terminated prior to the closing thereunder and neither the Stalking Horse APA nor any other asset purchase agreement constituting a higher and better offer than the Stalking Horse APA for the purchase of any of the Debtors' assets is in full force and effect;

(m)     the Court enters a final, non-appealable order denying confirmation of the Plan or declining to approve the disclosure statement;

(n)     any Debtor requests electricity or natural gas supply from the Postpetition Secured Party after the Postpetition Termination Date;

(o)     the Debtors fail to comply with an obligation of the Debtors delineated in the Wind-Down Plan (as defined in the RSA Term Sheet);

(p)     as of any Weekly Reporting Date (i) the Net AP Value is higher than the Maximum Amount, and (ii) within three (3) business days after such Weekly Reporting Date, the Postpetition Secured Party, the Senior Lien Secured Party, and the Debtors have not agreed, each in its sole discretion, on acceptable changes in the Approved Budget and the Maximum Amount to cure such shortfall;

(q)     the Debtors shall fail to comply with their obligation to provide an AR Report and appropriate supporting information as of any Reporting Day;

(r)     the Court shall enter an order approving any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation of any Prepetition Collateral;

(s)     the Debtors shall commence or join in as an adverse party in any suit or other proceeding against the Postpetition Secured Party or the Senior Lien Secured Party, including any proceeding seeking to avoid or require repayment of any payments, including the Adequate Protection Payments;

(t)     reversal, amendment, supplement, vacatur, or modification (without the express prior written consent of BP) of this Interim Order;

(u)     the entry of a final order by the Court avoiding or requiring repayment of any portion of the Adequate Protection Payments made by the Debtors hereunder;

(v)     the Debtors' exclusive right to file and solicit acceptances of a plan of reorganization is terminated or terminates;

(w)     the failure to make any payments required hereunder or under the Postpetition Transaction Documents when due and such failure shall remain unremedied for more than five (5) business days after receipt by the Debtors of written notice thereof from the Postpetition Secured Party or the Senior Lien Secured Party; and

(x)     the Debtors shall fail to consummate the sale of the real property located at 555 Pleasantville Road, Briarcliff Manor, NY 10510 by December 31, 2019.

21.     <u>Rights and Remedies Upon Event of Default</u>.  Upon occurrence of an Event of Default and following the giving of five (5) business days' notice to the Debtors (the "<u>Remedies</u>

40

Notice Period"), the Senior Lien Secured Party or the Postpetition Secured Party may exercise the remedies available to them under this Interim Order and applicable non-bankruptcy law, including, but not limited to, terminating the Postpetition Supply Agreement, and collecting and applying any proceeds of the Postpetition Collateral or the Prepetition Collateral in accordance with the terms of this Interim Order and the Senior Lien Transaction Documents and the Postpetition Transaction Documents. During the Remedies Notice Period, the Debtors may challenge whether an Event of Default has occurred and/or is continuing.  Unless the Court orders otherwise during the Remedies Notice Period, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated without further notice to, or order of, the Court, and BP shall be permitted to exercise all rights and remedies set forth in this Interim Order, the Postpetition Transaction Documents and the Senior Lien Transaction Documents, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code.  Notwithstanding anything herein to the contrary, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated for the purposes of giving any notice contemplated hereunder. The delay or failure to exercise rights and remedies under this Interim Order, the Postpetition Transaction Documents or the Senior Lien Transaction Documents shall not constitute a waiver of the Postpetition Secured Party's or the Senior Lien Secured Party's rights thereunder or otherwise.

22.    Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of the Court or any other court, the Postpetition Secured Party is entitled to

the protections provided in section 364(e) of the Bankruptcy Code. To the fullest extent permitted under section 364(e) of the Bankruptcy Code, any liens or claims granted to the Postpetition Secured Party hereunder arising prior to the effective date of any such modification, amendment, or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

23.  <u>Postpetition and Other Expenses</u>. All fees paid and payable, and costs and/or expenses reimbursed or reimbursable, as set forth in the Postpetition Transaction Documents, by the Debtors to the Postpetition Secured Party are hereby approved, subject to the terms of this Interim Order. Subject to Paragraph 24 of this Interim Order, the Debtors are hereby authorized to pay all such fees, costs, and expenses in accordance with the terms of the Postpetition Transaction Documents, without the necessity of any further application with the Court for approval or payment of such fees, costs, or expenses. Notwithstanding anything to the contrary herein, the fees, costs, and expenses of the Postpetition Secured Party under the Postpetition Transaction Documents, whether incurred prior to or after the Petition Date, shall be deemed fully earned, indefeasibly paid, irrevocable, and non-avoidable pursuant to, and in accordance with, the terms of the Postpetition Transaction Documents and, irrespective of any subsequent order approving or modifying the Postpetition Supply Facility or any other financing pursuant to section 364 of the Bankruptcy Code, fully entitled to all protections of section 364(e) of the Bankruptcy Code. All unpaid fees, costs, and expenses payable under the Postpetition Transaction Documents to the Postpetition Secured Party shall be included and constitute part of the Postpetition Obligations and be secured by the Postpetition Liens. Notwithstanding anything to the contrary herein, the Senior Lien Secured Party and the Postpetition Secured Party may submit joint invoices for payment of

professional fees, and are not obligated to distinguish, whether such fees are on account of the Senior Lien Secured Party or the Postpetition Secured Party.

24.    <u>Professional Fees</u>.  As Adequate Protection for the Senior Lien Secured Party (the "<u>Adequate Protection Fee Payments</u>") and as required under the Postpetition Transaction Documents, the Debtors are authorized to reimburse within ten (10) calendar days of written demand (together with reasonably detailed supporting documentation, which may be redacted to protect privileged or confidential information) the Senior Lien Secured Party or the Postpetition Secured Party for reasonable and documented out-of-pocket fees and expenses incurred in connection with (i) the Senior Lien Transaction Documents and the Prepetition Senior Lien Obligations, and (ii) the Postpetition Supply Facility, including without limitation, any amendments or waivers with respect thereto, any Event of Default in respect of the Postpetition Supply Facility, and any exercise of remedies in respect thereof (including reasonable documented out-of-pocket prepetition and postpetition fees, charges, and disbursements of legal counsel, financial advisors, and third-party appraisers and consultants advising the Senior Lien Secured Party or the Postpetition Secured Party incurred in connection with the Senior Lien Secured Party's or the Postpetition Secured Party's participation in the Chapter 11 Cases, limited in the case of legal counsel to one primary counsel (and (a) local counsel in applicable foreign and local jurisdictions, but limited to one local counsel in each such jurisdiction, (b) regulatory counsel, and (c) solely in the case of a conflict of interest, one additional counsel in each relevant jurisdiction). Payment of all such fees and expenses shall not be subject to allowance by the Court or the U.S. Trustee guidelines; <u>provided</u>, <u>however</u>, that the Debtors shall promptly provide copies of invoices received on account of fees and expenses of the professionals retained by the Senior Lien Secured

Party or the Postpetition Secured Party to counsel to the Committee (if any) and the U.S. Trustee,[6]

and the Court shall have exclusive jurisdiction over any objections raised to the invoiced amount

of the fees and expenses proposed to be paid, which objections may only be raised within ten (10)

calendar days after receipt thereof. In the event that within ten (10) calendar days from receipt of

such invoices the Debtors, the U.S. Trustee, or counsel to the Committee raises an objection to a

particular invoice, and the parties are unable to resolve any dispute regarding the fees and expenses

included in such invoice, the Court shall hear and determine such dispute; provided, that payment

of invoices shall not be delayed based on any such objections and the relevant professional shall

only be required to disgorge amounts objected to upon being "so ordered" pursuant to a final order

of the Court.

25.     Carve Out.

(a)     Carve Out. Upon the Carve Out Trigger Date (as defined below), the

Debtors shall, and the Postpetition Secured Party and the Senior Lien Secured Party hereby

authorize the Debtors to without further order of the Bankruptcy Court, fund a carve out (the

"Carve Out") from the Cash Collateral, the In-Court Sale proceeds, if applicable, and any other

property held by the Debtors at the applicable time of such Carve Out Trigger Date (and, to the

extent necessary to fund the Carve Out, any property received by the Debtors after such Carve Out

Trigger Date), in an amount equal to: (a) all professional fees and disbursements incurred on or

prior to the Carve Out Trigger Date by: (i) the professionals retained, pursuant to Bankruptcy Code

---

[6] For the avoidance of doubt, the fees provided for in this Interim Order must be reasonable. Although the U.S. Trustee fee guidelines do not specifically apply, professionals shall be required to submit time and expense detail entries to the U.S. Trustee, as well as any further information or back up documentation requested by the U.S. Trustee to determine the reasonableness of the invoiced amount. Invoices for such fees and expenses provided to any party other than the U.S. Trustee shall not be required to include any information subject to the attorney-client privilege or any information constituting attorney work product, and time and expense detail entries and other information provided solely to the U.S. Trustee shall be returned or destroyed after the U.S. Trustee has reviewed such material and any Fee Objection has been resolved upon request of the professional. Furthermore, the provision of invoices, time entries or other information pursuant to the terms hereof (including pursuant to this Paragraph 24) shall in no event constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine.

sections 327 or 1103(a), including the noticing agent, by the Debtors, subject to the Approved

Budget and the Permitted Variance; and (ii) the professionals retained, pursuant to Bankruptcy

Code sections 327 or 1103(a), by the Committee, if any, subject to the Approved Budget and the

Permitted Variance; (b) all professional fees and disbursements incurred after the Carve Out

Trigger Date by the professionals retained, pursuant to Bankruptcy Code sections 327 or 1103(a),

by the Debtors and the Committee, in an amount not to exceed the aggregate amount of $100,000;

(c) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), including, without

limitation, any interest payable thereon under 31 U.S.C. § 3717, and any fees payable to the Clerk

of the Bankruptcy Court; (d) all reasonable fees and expenses incurred by a chapter 7 trustee

appointed by the Court, not to exceed $10,000; (e) all fees and expenses incurred by Stephen S.

Gray or Gray & Company LLC on or prior to the Carve Out Trigger Date, not to exceed $50,000

per month, plus expenses, and up to $50,000 of fees and expenses incurred by Stephen S. Gray or

Gray & Company LLC after the Carve Out Trigger Date; (f) all claims arising from any tax liability

incurred in connection with any In-Court Sale; (g) all gross receipt taxes, sales taxes, and uses

taxes that relate to the Debtors' delivery of electricity or natural gas, excluding any such taxes that

relate to prior period filed tax returns; (h) all payroll obligations and benefits incurred on or prior

to the Carve Out Trigger Date, subject to the Approved Budget; (i) only to the extent such

payments are approved by the Court upon notice and hearing, all retention and incentive payments

contemplated by Debtors' key employee retention and key employee incentive programs, subject

to the Approved Budget, regardless of whether such employees at the time of the Carve Out

Trigger Date have satisfied the applicable requirements to receive such payments; and (j) only to

the extent such payments are approved by the Court upon notice and hearing, the amount of any

Buyer Expense Reimbursement and any Termination Fee payable to Buyer under the Stalking

Horse APA and the Bidding Procedures Order. Notwithstanding the foregoing or anything herein to the contrary, the Carve Out amount for any retained professional shall be net of any prepetition retainer amount held by such professional at the time of calculating the Carve Out amount.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by BP to the Debtors, their lead restructuring counsel, the U.S. Trustee, and lead counsel to any Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default, stating that the caps imposed under this paragraph have been invoked. The "Carve Out Trigger Date" shall be the date on which BP delivers the Carve Out Trigger Notice.

(b)    Carve Out Escrow. Following the occurrence of the Carve Out Trigger Date, the Debtors shall transfer the Carve Out amounts to one or more escrow accounts (the "Carve Out Escrows") in accordance with the terms of this Interim Order and the Approved Budget; provided, however, that any amounts in the Carve Out Escrows in excess of amounts payable under the Carve Out shall continue to be Cash Collateral of BP and the Junior Lien Secured Party, and any funds remaining in the Carve Out Escrows after payment of all amounts due under the Carve Out shall be returned to a Collateral Account.  The Debtors may not use funds held in the Carve Out Escrows for any purpose *other than* payment of obligations under the Carve Out provisions of this Interim Order in accordance with the Approved Budget, subject to the Permitted Variance.

(c)    No Direct Obligation To Pay Carve Out Claims. Notwithstanding anything to the contrary in this Interim Order, payment following the delivery of a Carve Out Trigger Notice of any of the statutory fees, professional fees, or other claims covered by the Carve Out shall be paid (and shall be deemed to have been satisfied) first, from unencumbered assets or cash that is not Cash Collateral (if any) and second, if there are no remaining unencumbered assets or cash

that is not Cash Collateral, from Cash Collateral.  Neither BP nor the Junior Lien Secured Party

shall be responsible for the direct payment of any claims against the Debtors or their estates or the

direct payment or reimbursement of any fees or disbursements of any professionals incurred in

connection with the Chapter 11 Cases or any Successor Cases.  Nothing in this Final Order or

otherwise shall be construed (i) to obligate the Postpetition Secured Party or the Senior Lien

Secured Party, in any way to pay claims against the Debtors or their estates or pay compensation

to or to reimburse expenses of any professional, or to guarantee that the Debtors have sufficient

funds to pay such claims, compensation or reimbursement, (ii) to increase the Carve Out, (iii) as

consent to the allowance of any professional fees or expenses, or (iv) to affect the right of the

Postpetition Secured Party or the Senior Lien Secured Party to object to the allowance and payment

of such claims, fees and expenses.

26.    <u>Release</u>. The Debtors represent that they are not aware of the existence of any

Claims (as defined below), and shall seek a declaration in the Final Order providing that the

Debtors, on behalf of themselves and their estates (including any successor trustee or other estate

representative in the Chapter 11 Cases or Successor Cases) and any party acting by, through, or

under the Debtors or their estates, forever and irrevocably release, discharge, waive, and acquit the

Postpetition Secured Party and the Senior Lien Secured Party, each of their respective affiliates,

and each of their respective former, current, or future officers, employees, directors, agents,

representatives, owners, members, partners, financial advisors, legal advisors, shareholders,

managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively,

and in each case in their capacities as such, the "<u>Released Parties</u>"), of and from any and all claims,

demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and

obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses,

damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the Postpetition Supply Facility, the Postpetition Transaction Documents, the Senior Lien Transaction Documents or the transactions contemplated hereunder or thereunder, including, without limitation, (a) (i) any so-called "lender liability" or equitable subordination claims or defenses, with respect to or relating to the Postpetition Obligations, Postpetition Liens, Postpetition Supply Facility, Prepetition Senior Lien Obligations, and the Senior Lien Transaction Documents, as applicable, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the liens or secured claims of the Postpetition Secured Party or the Senior Lien Secured Party and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability of the Postpetition Obligations and the Postpetition Liens, the Prepetition Senior Lien Obligations and Prepetition Senior Liens (collectively, "Claims"); *provided, however*, that the foregoing shall not release any claims for bad faith, fraud, or willful misconduct.

27.     Reservation of Certain Committee and Third Party Rights and Bar of Challenges and Claims.  The stipulations and releases contained in Paragraphs F and 26 of this Interim Order shall be binding upon the Debtors (but not their estates), their affiliates, and any of their respective successors (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for a Debtor) in all circumstances.  The stipulations and releases contained in Paragraphs F and 26

of this Interim Order shall be binding upon all other parties in interest, including, without limitation, the Committee, if any, and any other person acting on behalf of the Debtors' estates, unless a party in interest with standing granted by order of the Court (or other court of competent jurisdiction) has filed an adversary proceeding or contested matter (i) within (a) with respect to any party in interest granted standing other than the Committee, 75 calendar days after entry of this Interim Order, or (b) for the Committee, if appointed and granted standing, 60 calendar days after formation, in each case subject to further extension by written agreement of the Debtors and the Senior Lien Secured Party, each acting in their sole discretion (in each case, a "Challenge Period" and the date of expiration of each Challenge Period being a "Challenge Period Termination Date"), (ii) seeking to avoid, object to, or otherwise challenge the findings or Debtors' Stipulations regarding: (a) the validity, enforceability, extent, priority, or perfection of the mortgages, security interests, and liens of the Senior Lien Secured Party; (b) the validity, enforceability, allowability, priority, secured status, or amount of the Prepetition Senior Lien Obligations; or (c) any of the other released Claims or stipulated facts (any such claim, a "Challenge") and (iii) there is a final order entered in favor of the plaintiff sustaining any such Challenge in any such adversary proceeding or contested matter. Upon the expiration of the Challenge Period Termination Date without the filing of a Challenge (or if any such Challenge is filed and overruled): (a) any and all such Challenges by any party (including, without limitation, the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever waived, released, and barred; (b) the Prepetition Senior Lien Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in

the Debtors' Chapter 11 Cases and any subsequent chapter 7 cases; (c) the Prepetition Senior Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination, or avoidance; and (d) the stipulations and releases contained in Paragraphs F and 26 of this Interim Order and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Senior Lien Secured Party's claims, liens, and interests contained in this Interim Order shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates, and all creditors, interest holders, and other parties in interest in these Chapter 11 Cases and any Successor Cases; *provided that*, for the avoidance of doubt, the Challenge Period Termination Date shall not apply to any action based on the valuation of the Prepetition Collateral for purposes of Bankruptcy Code sections 506 and 1129. If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in this Interim Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such adversary proceeding or contested matter prior to the Challenge Period Termination Date. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee appointed in these Chapter 11 Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Senior Lien Transaction Documents, the Prepetition Senior Liens, or the Prepetition Senior Lien Obligations, and an order of the Court (or any other court of competent jurisdiction) conferring such standing on a Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by the Committee or such other party-in-interest.

28.    <u>Limitations on the Use of Cash Collateral and the Postpetition Supply Facility</u>. Notwithstanding anything herein to the contrary, the Debtors shall not assert or prosecute, and no portion of the proceeds of the Postpetition Supply Facility, the Postpetition Collateral, the Prepetition Collateral, including Cash Collateral, or the Carve Out, and no disbursements set forth in the Budget, may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any person in connection with (a) incurring Indebtedness (as defined in the Postpetition Supply Agreement) except to the extent permitted under the Postpetition Supply Agreement; (b) preventing, hindering, or delaying any of the Postpetition Secured Party's or the Senior Lien Secured Party's enforcement or realization upon, or exercise of rights in respect of, any of the Postpetition Collateral or the Prepetition Collateral once an Event of Default has occurred and after the Remedies Notice Period; (c) objecting, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Postpetition Obligations, the Postpetition Liens, the Postpetition Collateral, the Prepetition Senior Lien Obligations, the Prepetition Senior Liens, or the Prepetition Collateral (including Cash Collateral), or any other rights or interest of any of the Postpetition Secured Party or the Senior Lien Secured Party (in the case of each of the foregoing, in their respective capacities as such); (d) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against any of the Postpetition Secured Party or the Senior Lien Secured Party, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees (in the case of each of the foregoing, in their respective capacities as such); or (e) asserting, joining, commencing, supporting, investigating, or prosecuting any action for any claim, counterclaim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any

order, judgment, determination, or similar relief against, or adverse to the material interests of the Released Parties, arising out of, in connection with, or relating to the Postpetition Supply Facility, the Postpetition Transaction Documents, the Senior Lien Transaction Documents, or the transactions contemplated thereunder, including, without limitation, (i) any action arising under the Bankruptcy Code; (ii) any so-called "lender liability" claims and causes of action; (iii) any action with respect to the validity and extent of the Postpetition Obligations, the Postpetition Superpriority Claims, or the Prepetition Senior Lien Obligations, or the validity, extent, perfection, and priority of the Postpetition Liens or the Prepetition Senior Liens; (iv) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counterclaims, or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against, or with respect to, the Postpetition Liens, the Postpetition Superpriority Claims, or the Prepetition Senior Liens, in whole or in part; (v) appeal or otherwise challenge the Financing Orders, the Postpetition Transaction Documents, or any of the transactions contemplated therein; and/or (vi) any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the Postpetition Secured Party or the Senior Lien Secured Party in respect of their liens and security interests in the Postpetition Collateral or the Prepetition Collateral or any of their rights, powers, or benefits hereunder or in the Postpetition Transaction Documents or the Senior Lien Transaction Documents anywhere in the world; provided, however, that the Carve Out and such collateral proceeds and loans under the Postpetition Transaction Documents may be used for allowed fees and expenses, in an amount not to exceed $25,000 in the aggregate (the "Investigation Fund"), incurred solely by the Committee, if appointed, in investigating the validity, enforceability, perfection, priority, or extent of the

Prepetition Senior Liens during the Challenge Period; provided further, however, that the Committee may not use the Investigation Fund to initiate, assert, join, commence, support, or prosecute any actions or discovery under Part VII of the Bankruptcy Rules with respect thereto. For the avoidance of doubt, the limitations set forth in this Paragraph 28 shall not apply to any action based on the valuation of the Prepetition Collateral or Postpetition Collateral for purposes of Bankruptcy Code sections 506 and 1129. Subject only to, and effective only upon, entry of the Final Order, any and all claims for fees or expenses incurred by the Committee, if appointed, or by any party in interest in violation of any clause of this Paragraph 28 (including amounts incurred in excess of the Investigation Fund) shall not be allowed, treated, or payable as an administrative expense claim for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, and the non-payment of such fees and expenses shall not constitute grounds to deny confirmation of any plan of reorganization for any of the Debtors.

29.     No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

30.     Section 506(c) Claims.  The Debtors shall seek a declaration in the Final Order that no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time, or any future proceeding that may result therefrom, shall be charged against the Senior Lien Secured Party or any of its respective claims or the Prepetition Collateral, the Junior Lien Secured Party or any of its respective claims or the Prepetition Collateral, or the Postpetition Secured Party or any of its respective claims or the Postpetition Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the Senior Lien Secured Party and the Postpetition Secured Party, and no such consent shall be

implied, directly or indirectly, from any other action, inaction, or acquiescence by any such representatives or agents.

31.    <u>No Waiver of Prepetition Secured Parties' Rights; Reservation of Rights</u>. Notwithstanding any provision in this Interim Order to the contrary, this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, each Prepetition Secured Party's rights with respect to any person or entity other than the Debtors or with respect to any other collateral owned or held by any person or entity other than the Debtors.  The rights of the Prepetition Secured Parties are expressly reserved, and entry of this Interim Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of:

(a)    the Senior Lien Secured Party's rights under any of the Senior Lien Transaction Documents;

(b)    the Junior Lien Secured Party's rights under the Junior Lien Loan Agreement;

(c)    each Prepetition Secured Party's right to seek any other or supplemental relief in respect of the Debtors; or

(d)    each Prepetition Secured Party's right to seek modification of the grant of adequate protection provided under this Interim Order so as to provide different or additional adequate protection at any time.

32.    <u>No Liability to Third Parties</u>.  Upon entry of the Final Order, in permitting the use of Cash Collateral under the terms set forth herein or in taking any other actions related to this Interim Order, the Senior Lien Secured Party and the Postpetition Secured Party (a) shall have no liability to any third party and shall not be deemed to be in control of the operations of any Debtors or to be acting as a "controlling person," "responsible person," "owner or operator" with respect

to the operation or management of any Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute), and (b) shall not owe any fiduciary duty to any of the Debtors, their creditors, or their estates, and shall not be party to or be deemed to be party to a joint venture or partnership with any of the Debtors.

33.    <u>Debtors' Bank Accounts</u>.  No action, inaction, or acquiescence by the Postpetition Secured Party or the Senior Lien Secured Party in approving, consenting to, authorizing, or otherwise permitting the Debtors to access, control, or transfer (or cause the transfer of) funds from the Debtors' bank accounts (each, a "<u>Transfer Authorization</u>") shall be deemed to constitute the Postpetition Secured Party's or the Senior Lien Secured Party's consent to the Debtors' use of Cash Collateral in contravention of the terms of this Interim Order or the Approved Budget, and no Transfer Authorization shall be construed to modify the Approved Budget or the terms of this Interim Order.

34.    <u>No Marshaling/Applications of Proceeds</u>.  The Debtors shall seek a declaration in the Final Order that the Senior Lien Secured Party and the Postpetition Secured Party shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the Postpetition Collateral, as the case may be, and proceeds or payments shall be received and applied in accordance with the Senior Lien Transaction Documents or the Postpetition Transaction Documents, including, without limitation, the Intercreditor Agreement, notwithstanding any other agreement or provision to the contrary.

35.    <u>Section 552(b)</u>.  The Debtors shall seek a declaration in the Final Order that the Senior Lien Secured Party and Junior Lien Secured Party shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under

section 552(b) of the Bankruptcy Code shall not apply to the Senior Lien Secured Party or the Junior Lien Secured Party with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral.

36.     <u>Discharge Waiver</u>. Unless the Postpetition Secured Party otherwise agrees in writing, the Postpetition Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the Postpetition Obligations have been indefeasibly paid in full, in cash, the Postpetition Supply Facility has been terminated on or before the effective date of a confirmed plan of reorganization or liquidation.

37.     <u>Proofs of Claim</u>.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or Successor Cases to the contrary, the Senior Lien Secured Party and Junior Lien Secured Party will not be required to file proofs of claim in any of these Cases or Successor Cases for any claim described herein, and the Debtors' Stipulations in Paragraph F herein shall be deemed to constitute a timely filed proof of claim for both the Senior Lien Secured Party and the Junior Lien Secured Party with respect to each party's claim.  Notwithstanding the foregoing, each of the Senior Lien Secured Party and Junior Lien Secured Party is authorized, but not directed or required, in its sole discretion, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or Successor Cases for any claim described herein.

38.     <u>Conflict with any other Order</u>.  In the event of any conflict or inconsistency between the terms and provisions of this Interim Order, and the terms and provisions of any other interim and/or final orders, or any other agreement or contract to which the Debtors are a party, the terms and provisions of this Interim Order shall govern.

39.    <u>Binding Effect of Interim Order</u>.    Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Senior Lien Secured Party and the Postpetition Secured Party, all other creditors of any of the Debtors, any Committee or any other Court-appointed committee appointed in any Chapter 11 Cases, and all other parties in interest and the respective successors and assigns of each of the foregoing, including any chapter 7 or chapter 11 trustee or other fiduciary hereafter appointed or elected for the estates of the Debtors or with respect to the property of the estate of any Debtors in any of these Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case.

40.    <u>Survival</u>.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of these Chapter 11 Cases; (b) converting any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; or (c) dismissing any of these Chapter 11 Cases or any Successor Cases.    The terms and provisions of this Interim Order, including, without limitation, the granting of the Adequate Protection Liens and 507(b) Claim, and the other protections granted to the Senior Lien Secured Party, and the granting of the Postpetition Liens and the Postpetition Superpriority Claims, and other protections granted to the Postpetition Secured Party pursuant to this Interim Order, shall continue in full force and effect notwithstanding entry of any such order.

41.    <u>Final Hearing</u>.    The Final Hearing shall be November 5, 2019, at 10:00 a.m., prevailing Eastern Time.    The Debtors shall provide notice of the Final Hearing to: (a) the Master Service List; (b) counsel to the Junior Lien Secured Party; and (c) the 2002 List (as defined in the

Case Management Order) and otherwise comply with the Case Management Order. Any objections or responses to the Motion must be filed and served, with a copy to the Court's chambers, on or before October 25, 2019, at 4:00 p.m., prevailing Eastern Time as provided in the Case Management Order.  If no objections are filed to the Motion, the Court may enter the Final Order without further notice or hearing.

42.     Effect of this Interim Order.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

43.     Retention of Jurisdiction.  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

Dated:  October 8, 2019                 /s/ Robert D. Drain
       White Plains, New York         THE HONORABLE ROBERT D. DRAIN
                             UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

Approved Budget

**EXHIBIT B**

<u>Postpetition PSA Amendment</u>

**EXHIBIT C**

<u>Postpetition ISDA Amendments</u>