| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date:  October 15, 2019<br>Hearing Time:   2:00 p.m. |
| --------------------------------------------------------- x<br>In re                                                      :<br>                                                           :<br>AGERA ENERGY LLC, *et al.*,[1]                             :<br>                                                           :<br>                       Debtors.                            :<br>                                                           :<br>--------------------------------------------------------- x | <br><br>Chapter 11<br><br>Case No. 19-23802 (RDD)<br><br>(Jointly Administered) |

**OMNIBUS OBJECTION OF THE UNITED STATES TRUSTEE TO THE DEBTORS' REQUEST TO FILE DOCUMENTS AND INFORMATION UNDER SEAL**

**TO:   THE HONORABLE ROBERT D. DRAIN,**
**        UNITED STATES BANKRUPTCY JUDGE**

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**") submits the following omnibus objection to the motions of Agera Energy LLC, *et al.* (the "**Debtors**") for the (i) Entry of an Order Authorizing (I) the Debtors to Redact Certain Personally Identifiable and Commercially Sensitive Information From Court Filings and (II) the Debtors Claims and Noticing Agent to Withhold Publication of Claims Filed by Certain Individuals (the "**Creditor Seal Motion**") [ECF No. 19]; and (ii) Entry of an Order Granting Leave to File the Unredacted Stalking Horse APA Under Seal (the "**APA Seal Motion**") [ECF No. 20] (collectively, referred to as the "**Seal Motions**"). In support thereof, the United States Trustee respectfully states:

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Agera Energy LLC (8122); Agera Holdings, LLC (3335); energy.me midwest llc (9484); Aequitas Energy, Inc. (7988); Utility Recovery LLC (4351); and Agera Solutions LLC (8749). The location of the Debtors' corporate headquarters and the service address for all Debtors is 555 Pleasantville Road, S-107, Briarcliff Manor, NY 10510.

**Introduction**

To overcome the strong public policy favoring open access to court records, the Debtors' bear a heavy burden requiring a demonstration of extraordinary circumstance or compelling need. The Seal Motions do not meet the criteria for the simple reason that the Debtors provide only conclusory statements about the commercial importance of the information that the Debtors seek to seal. The Debtors merely provide the motions – with no declarations – that contain attorneys' unsworn statements which are not evidence. Accordingly, the Debtors have not met their evidentiary burden to show why the information they seek to conceal from public access meets the exception under Section 107 of the Bankruptcy Code.

Even weighing the Debtors' reasons – despite of their lack of evidentiary support – the Debtors do nothing more than provide vague statements that the information constitutes confidential commercial information. The sole support the Debtors provide are their vague assertions that allowing access to the identity and addresses of the Debtors' customers and sales representatives would allow competitors to easily target the customers and that information about the asset sale could have a material, negative impact on the purchase price. A mere recitation of the exception is not enough to support their reasons to seal the information. The Debtors' nebulous claims are a far-cry from the types of specific examples of discrete harm required to overcome the strong presumption and Congressionally mandated public nature of facts and documents upon which a bankruptcy court bases its rulings. Equally availing is that in a distinctive market such as retail electricity and natural gas, and given the fact that the debtors have disclosed the locations it provides services to, it seems likely that the customer and sales information could be readily available and not difficult to uncover. Likewise, the sale – which the Debtors seek approval from

this Court – is subject to higher and better offers and the lack of transparency hinders the sale process.

Also, the Debtors contend that the employee addresses should not be disclosed on the basis of undue risk of identity theft or other unlawful injury to the individual or the individual's property and cite to Section 107(c) of the Bankruptcy Code. Section 107(c) defines "means of identification" as set forth in Section 1028 of title 18 – which is omitted from the Debtors' motions. In fact, Section 1028 of title 18 does not enumerate mailing addresses as "means of identification". Nevertheless, names and addresses – especially of creditors—are not the type of personally identifiable information that the bankruptcy code seeks to protect. Such information is readily available, and can be found free of charge on sites such as whitepages.com. Without any additional facts establishing an "undue" risk of identity theft or other unlawful injury to the individual or the individual's property, the Debtors' request to hide this information must be denied. Accordingly, the Seal Motions should not be approved.

**Background**

1. On October 4, 2019 (the "**Petition Date**"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtors provide retail electricity and natural gas to commercial, industrial, and residential customers. The Debtors offer their customers "energy choice"—the ability to receive electricity and natural gas commodity needs from a source other than the local utility in certain markets that have been restructured to permit retail competition, which allows customers to tailor energy supply to their specific needs. See, *the Declaration of Todd Sandford in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings*, ¶ 7. [ECF No. 3].

3. The Debtors commenced these Chapter 11 Cases in order to pursue the sale of their assets pursuant to Bankruptcy Code section 363 and on the Petition Date, the Debtors filed their Motion for Entry of Orders (I)(A) Approving Bidding Procedures Related to the Sale of the Debtors' Assets, (B) Approving Stalking Horse Asset Purchase Agreement and Bid Protections, (C) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (D) Approving Procedures Related to the Assumption and Assignment of Certain Executory Contracts, (E) Scheduling Auction for, and Hearing to Approve Sale of the Agera OPCO Entities' Assets Free and Clear of All Liens, Claims, Interest and Encumbrances and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Granting Related Relief (the "**Sale Motion**"). [ECF No. 16 ¶ 1].

4. On the Petition Date, the Debtors filed the Creditor Seal Motion, seeking to order authorizing (i) the Debtors to redact from the Creditor List, Schedules, or any paper filed or to be filed with the Court, certain personally identifiable information, including the home addresses of current employees, the last known addresses of any former employees, and certain commercially sensitive information, including the identity and addresses of the Debtors' customers and sales representatives and (ii) the Claims and Noticing Agent to withhold publication of claims filed by the Debtors' sales representatives and customers. See Creditor Seal Motion, ¶ 8.

5. On the Petition Date, the Debtors filed the APA Seal Motion which seeks to seal the following information contained in the Asset Purchase Agreement[2] ("**APA**") annexed to the Sale Motion:

- Section 2.06(b) contained in the APA which details certain payments that the Stalking Horse Bidder may make to the Debtors' third-party sales representatives;

- Sections 2.07(b)(iv) and (vi) contained in the APA which describes a purchase price adjustment mechanism that adjusts the purchase price based on certain circumstances, as set forth in the APA, and the purchase price methodology;

- Annex 2.07(b) of the APA detailing the purchase price adjustment methodology (Purchase Price Adjustment Methodology);

- Schedule 2.06 (Brokers) containing a list of the names of the Debtors' third-party sales representatives;

- Schedules 2.01(a), 2.01(h), and 2.01(j) allocating and assigning value by individual customer accounts;

- Annex 2.07(b)(vii) assigning value to the Sellers' natural gas storage (Storage Values));

- Schedule 3.07 (Taxes) containing certain non-public tax disclosures;

- Annex 5.01 (Customer Data) containing certain confidential customer data;

- Annex 7.20 (Hedge Novations) setting forth the method for determining the portions of hedges to be novated to the Stalking Horse Bidder; and

- Annex 1.01 (Renewed Contracts – Margin) and 1.02 (Renewed Contracts – Calculation of Margin) allocating and assigning value to extensions or renewals of customer contracts

*See*, the APA Seal Motion, ¶¶ 10-11

---

[2] The Debtors provided an unsealed version of the APA to the United States Trustee, however, much of the information annexed and in the schedules are stated to be contained in a "Data Room."

–5–

**Argument**

A. **Governing Law**

Bankruptcy Code Section 107 sets forth the legal standard applicable to sealing information that is confidential. *See also* Fed. R. Bankr. P. 9018. Section 107(a) of the Bankruptcy Code provides, in part, that subject to certain limited exceptions:

> a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

11 U.S.C. § 107(a). "There is a strong presumption and public policy in favor of public access to court records." *In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011); *see also, In re Food Mgmt. Grp.*, LLC, 359 B.R. 543, 553-55 (Bankr. S.D.N.Y. 2007) (Section 107 reflects Congress' intent to favor public access to papers filed with the Bankruptcy Court).

Congress has "implemented a statutory exception to prevent disclosure of commercial information in a bankruptcy case." *Borders*, 462 B.R. at 46. Section 107(b) of the Bankruptcy Code provides in relevant part that:

> [o]n request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b).[3] "The exception to the general right of access in section 107(b) is narrow." *Borders*, 462 B.R. at 47. The burden is on the moving party to show that a request to place

---

[3] Bankruptcy Rule 9018 defines the procedure by which a party may move for relief under Section 107(b). Fed. R. Bankr. P. 9018.

–6–

documents under seal falls within the parameters of Section 107(b). *Id.* at 46; *Food Mgmt.*, 359 B.R. at 561.

Under Section 107(b), "commercial information" has been defined as information which would cause an "unfair advantage to competitors by providing them information as to the commercial operations" of the requesting party. *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994)(internal quotations omitted); *accord Borders*, 462 B.R. at 47. As this Court has stated:

> the term ["commercial information"] includes situations where a bankruptcy court may reasonably determine that allowing such disclosure would have a chilling effect on business negotiations, ultimately affecting the viability of Debtors. Moreover, the Court must also find that the redacted information is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit the entity's competitors.

*Borders*, 462 B.R. at 47-48 (internal quotations, citations and brackets omitted). The moving party bears the burden of showing that a request to place documents under seal falls within the parameters of Bankruptcy Code § 107(b) and Bankruptcy Rule 9018 by demonstrating ". . . that the interest in secrecy outweighs the presumption in favor of access." *In re Continental Airlines*, 50 B.R. 334, 340 (D. Del. 1993); *accord, In re Food Mgmt. Group*, 359 B.R. 543, 561 (Bankr. S.D.N.Y. 2007); *In re Fibermark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005). To meet this burden, the movant "must demonstrate extraordinary circumstances and compelling need to obtain protection." *Food Mgmt. Group*, 359 B.R. at 561 (*citing In re Orion Pictures Corp.*, 21 F.3d 24 at 27 (2d Cir. 1994)). A contractual agreement to keep information confidential is not determinative. *See In re Muma Services Inc.*, 279 B.R. 478, 485 (Bankr. D. Del. 2002) (if parties could file documents under seal simply because of confidentiality provisions, then Court "would never have control over motion practice" and Section 107 "would be meaningless.").

–7–

B. **The Debtors Have Not Met Their Evidentiary Burden for Either of the Seal Motions to be Granted**

The Debtors have failed to provide any evidence to meet their burden for either of the Seal Motions – such as a declaration or otherwise. In support of the extraordinary request to keep information from public access, for which the debtors bear the burden, the debtors fail to offer a rational coherent explanation or basis. Rather, they make vague and unsupported statements which alone, are simply not sufficient to overcome Congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings. *See e.g., Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 561 B.R. 36, 43 (Bankr. S.D.N.Y. 2016) ("Evidence—not just argument—is required to support the extraordinary remedy of sealing."). These conclusory statements regarding the information's apparent commercial importance and statements made by attorneys in briefs are not evidence. *Id*. at 44. (*citing Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009). Significantly, an attorney's unsworn statements in a brief are not evidence. *Id*. On this basis alone, the Seal Motions must be denied.

C. **The Creditor Seal Motion Does Not Meet the Criteria of Section 107 of the Bankruptcy Code**

The Debtors invoke the exception under Section 107(b)(1) of the Bankruptcy Code to conceal the identities and addresses of the Debtors' customers and sales representatives as confidential commercial information. *See* 11 U.S.C. § 107(b)(1) and Fed. R. Bankr. P. 9018. The Debtors have not provided an explanation of how disclosing identities and addresses of the Debtors' customers and sales representatives – who are creditors of this estate – meet the criteria of Section 107(b). The reason, of course, is because none of the information the Debtors seek to hide meet those criteria. "The commercial information exception is not intended to offer a safe

–8–

harbor for those who crave privacy or secrecy for its own sake." *Motors Liquidation Co. Avoidance Action Trust*, 561 B.R. at 43 (*citing In re Drier LLP*, 484 B.R. 821, 822-23 (Bankr. S.D.N.Y. 2013). Similarly, there are no specific examples demonstrating how disclosure of the information would harm anyone. Rather, the Debtors merely recite the standard as they assert that it "would allow competitors to easily target the customers", which would place the Debtors at an unfair competitive advantage. Creditor Seal Motion, ¶ 14. Regardless, in a distinctive market such as retail electricity and natural gas, and given the fact that the Debtors have disclosed the locations it provides services to, it seems likely that the information they seek to seal could be readily available and not difficult to uncover.

Further, the Debtors cite Section 107(c) of the Bankruptcy Code for their request to redact employee addresses on the basis of undue risk of identity theft or other unlawful injury to the individual or the individual's property. *See* 11 U.S.C. § 107(c). However, the Debtors omit that Section 107(c) defines "means of identification" as set forth in section 1028 of title 18. Specifically, 18 U.S.C. Section 1028(d)(7) provides that:

> (7) the term ''***means of identification***'' means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—
>
> (A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;
>
> (B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;
>
> (C) unique electronic identification number, address, or routing code; or
>
> (D) telecommunication identifying information or access device (as defined in section 1029(e)).

18 U.S.C. §1028(d)(7).

Mailing addresses are not one of the enumerated "means of identification" defined in 18 U.S.C. Section 1028(d). *United States v. Hawes*, 523 F.3d 245, 250 (3d Cir. 2008) ("What is clear is that the statute does not include mail or an address within the list of means of identification; nor are the examples easily analogized to a piece of mail or an address."); *United States v. Hawes*, 523 F.3d 245, 250 (3d Cir. 2008); *see also United States v. Craig*, 343 Fed. Appx. 766, 770 (3d Cir. 2009) (noting that "mailing addresses – which are not specifically listed or referred to by § 1028(d)(4) [now § 1028(d)(7)] – do not fall under the meaning of the guideline"). Indeed, names and addresses are not the type of personally identifiable information that the Bankruptcy Code seeks to protect. Such information is readily available, and can be found free of charge on sites such as whitepages.com. Without any additional facts establishing an "undue" risk of identity theft or other unlawful injury to the individual or the individual's property, the Creditor Seal Motion must be denied.

### D. **The APA Is Not Entitled To the Extraordinary Relief of Sealing**

In conjunction with the pursuit of the sale of their assets, the Debtors ask this court to grant the extraordinary relief of keeping critical information relating to the sale a secret from the very creditors and parties-in-interest who are affected by the sale and who are charged with analyzing the propriety of the sale. The APA Seal Motion contains little to no justification for the relief the Debtors seek other than the contention that that the Debtors and the Stalking Horse Bidder believe the information requires protection from general public disclosure under Bankruptcy Code section 107(b). *See* Seal Motion, ¶ 11. Further, the Debtors claim that disclosure of the information could have a material, negative impact on the purchase price. *See* Seal Motion, ¶ 15. These assertions, without more, do not demonstrate that the information is, in

fact, commercially sensitive information for purposes of section 107(b) and again, the Debtors provide no specific examples demonstrating how disclosure of the information would harm anyone or how it would give other parties an advantage. More importantly, the terms of the APA are essential and critical to the Sale Motion, which the Debtors are requesting this Court to approve – a decision that will have serious and significant implications upon numerous parties. Without access to those terms, an analysis of the sale, which is subject to higher and better offers, is not possible. Consequently, the APA Seal Motion must be denied.

WHEREFORE, the United States Trustee respectfully requests that the Court deny the Seal Motions as requested herein and grant such other and further relief as the Court deems appropriate.

Dated: New York, New York
       October 11, 2019

> Respectfully Submitted,
>
> WILLIAM K. HARRINGTON
> UNITED STATES TRUSTEE
>
> By:   *s/ Shannon Anne Scott*
>       Shannon Anne Scott
>       Trial Attorney
>       201 Varick Street, Suite 1006
>       New York, New York 10014
>       Tel. No. (212) 510-0500