**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AGERA ENERGY LLC, *et al.*,[1] | ) | Case No. 19-23802 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I)(A) APPROVING BIDDING PROCEDURES RELATING TO THE SALE OF DEBTORS' ASSETS, (B) APPROVING STALKING HORSE ASSET PURCHASE AGREEMENT AND BID PROTECTIONS, (C) APPROVING FORM AND MANNER OF NOTICES OF SALE, AUCTION AND SALE HEARING, (D) APPROVING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, (E) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE, SALE OF THE DEBTORS' ASSETS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Sale Motion")[2] of Agera Energy, LLC and the above-captioned debtors, as debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105(a), 363, and 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 6006-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), for an order (i) approving the Bidding Procedures, including the Bid Protections granted to the Stalking Horse Bidder as provided in the Stalking Horse APA, (ii) the form and manner of notice of the Auction, Sale, and Sale Hearing, (iii) the Assumption

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Agera Energy LLC (8122); Agera Holdings, LLC (3335); energy.me midwest llc (9484); Aequitas Energy, Inc. (7988); Utility Recovery LLC (4351); and Agera Solutions LLC (8749).  The location of the Debtors' corporate headquarters and the service address for all Debtors is 555 Pleasantville Road, S-107, Briarcliff Manor, NY 10510.

[2] Capitalized terms utilized but not defined herein shall have the meanings given them in the Sale Motion, the Stalking Horse APA, or the Bidding Procedures, as applicable.

and Assignment Procedures, and (iv) scheduling the Auction and Sale Hearing; and this Court

having jurisdiction to consider the Sale Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference*, dated

January 31, 2012; and consideration of the Sale Motion and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Sale Motion having been given as

provided in the Sale Motion, and such notice having been due and sufficient under the

circumstances; and it appearing that no other or further notice need be provided except as set

forth herein; and upon the objection of the Official Unsecured Creditors Committee (the

"Committee") to the Motion; and this Court having held a hearing to consider the relief

requested in the Sale Motion as to the Bidding Procedures, Auction, and Sale (the "Hearing");

and upon the record of the Hearing, including the First Day Declaration, the Klein Declaration,

the Sandford Declaration and the testimony of Mr. Klein; and, after due deliberation, the Court

having found and determined for the reasons stated in its bench ruling at the Hearing that that the

relief the relief sought in the Sale Motion could not be granted without certain amendments to

the Bidding Procedures and the Bid Protections in addition to those agreed before the start of the

Hearing; and the Debtors and the Stalking Horse Bidder having agreed to amend the Stalking

Horse APA to conform to such ruling, a copy of which is attached as **Exhibit 1** hereto (as so

amended, the "Stalking Horse APA"), with related modifications to the Bidding Procedures, a

copy of which is attached as **Exhibit 2** hereto, the Bid Protections, and the related notices and

Assumption and Assignment Procedures set forth herein; and it further appearing that the parties'

agreement to such modifications and approval of the Bidding Procedures and Bid Protections as

so modified is in the best interests of the Debtors, their estates, creditors, and all parties in

interest, and that the legal and factual bases set forth in the Sale Motion establish just cause for

the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

**HEREBY FOUND AND DETERMINED THAT**:

A.     The findings and conclusions set forth herein constitute the Court's findings of

fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings

of fact constitute conclusions of law, and to the extent that any of the following conclusions of

law constitute findings of fact, they are adopted as such.

B.     The Court has jurisdiction to consider the Sale Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334, and this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O).  Venue of these Chapter 11

Cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.     The Debtors' proposed notice of the Sale Motion, the Bidding Procedures, the

Hearing and the proposed entry of this Order are (i) appropriate and reasonably calculated to

provide all interested parties with timely and proper notice, (ii) in compliance with all applicable

requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules

and (iii) adequate and sufficient under the circumstances of these Chapter 11 Cases, and no other

or further notice is required.  A reasonable opportunity to object or be heard regarding the relief

requested in the Sale Motion (including, without limitation, with respect to the Bidding

Procedures and Bid Protections) has been afforded to all interested persons and entities,

including, but not limited to, the Sale Notice Parties.

D.     The Bidding Procedures in the form attached hereto as **Exhibit 2** are fair,

reasonable and appropriate, are designed to maximize creditor recoveries from a sale of the

Assets and permit the Debtors to comply with their obligations under the Stalking Horse APA and the Cash Collateral Order.

  E. The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Order and thereby: (i) approve the Bidding Procedures, (ii) authorize the Bid Protections, under the terms and conditions set forth in the Stalking Horse APA, (iii) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing and other deadlines set forth in the Bidding Procedures, (iv) approve the Noticing Procedures and the forms of notice and (v) approve the Assumption and Assignment Procedures and preliminarily approve the forms of relevant notice.  Such compelling and sound business justification, which was set forth in the Sale Motion, the First Day Declaration and on the record at the Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

  F. The Bid Protections are fair and reasonable and provide a benefit to the Debtors' estates and stakeholders.

  G. The Debtors and their advisors, including Miller Buckfire, engaged in a robust and extensive marketing and sale process before the Petition Date, to solicit and develop the highest or best offer for the Purchased Assets.

  H. Exelon Generation Company, LLC shall act as the Stalking Horse Bidder under the Stalking Horse APA, including that such agreement is subject to higher or better offers in accordance with the Bidding Procedures.

  I. Pursuit of the Stalking Horse Bidder as a "stalking-horse" bidder and its Stalking Horse APA as a "stalking-horse" sale agreement is in the best interests of the Debtors and the Debtors' estates and creditors and reflects a sound exercise of the Debtors' business judgment.

The Stalking Horse APA provides the Debtors with the opportunity to sell the Purchased Assets

in order to maximize value to all stakeholders.  Without the Stalking Horse APA, the Debtors

would likely realize a lower price for the Purchased Assets, and, therefore, the contributions of

the Stalking Horse Bidder to the process have provided a substantial benefit to the Debtors and

their estates and creditors commensurate with the Bid Protections.  The Stalking Horse APA will

enable the Debtors to secure a fair and adequate baseline price for the Debtors' Assets at the

Auction and, accordingly, will provide a clear benefit to the Debtors' estates, their creditors, and

all other parties in interest.

J.      The Bid Protections, including, but not limited to, the Buyer Expense

Reimbursement and Termination Fee (i) have been negotiated by the Stalking Horse Bidder and

the Debtors and their respective advisors at arms' length and in good faith and (ii) are necessary

to ensure that the Stalking Horse Bidder will continue to pursue the Stalking Horse APA and the

Sale.  The Buyer Expense Reimbursement and Termination Fee, to the extent and in the form

payable under the Stalking Horse APA and herein, (a) (x) are an actual and necessary cost and

expense of preserving the Debtors' estates within the meaning of Bankruptcy Code section

503(b) and (y) shall be treated to the extent and in the form payable under the Stalking Horse

APA and herein, as allowed super-priority administrative expense claims senior to all other

administrative claims against the Debtors' estates pursuant to Bankruptcy Code sections 105(a),

503(b), and 507(a)(2), (b) are commensurate with the real and material benefits conferred upon

the Debtors' estates by the Stalking Horse Bidder, and (c) are fair, reasonable, and appropriate,

including in light of the size and nature of the Sale, the necessity to announce a sale transaction

for the Purchased Assets at the outset of these Chapter 11 Cases, and the efforts that have been

and will be expended by the Stalking Horse Bidder.  The Bid Protections, including, but not

limited to, the Buyer Expense Reimbursement and Termination Fee, are a material inducement for, and condition of, the Stalking Horse Bidder's execution of the Stalking Horse APA.  Unless it is assured that the Bid Protections, including, but not limited to, the Buyer Expense Reimbursement and Termination Fee, will be available, the Stalking Horse Bidder is unwilling to remain obligated to consummate the Sale or otherwise be bound under the Stalking Horse APA (including the obligations to maintain its committed offer while such offer is subject to higher or better offers as contemplated by the Bidding Procedures).

K.    The Debtors have articulated good and sufficient business reasons for this Court to approve (i) the Bidding Procedures, (ii) the Assumption and Assignment Procedures, (iii) the Bid Protections, including, but not limited to, the Buyer Expense Reimbursement and Termination Fee (to the extent payable under the Stalking Horse APA), and (iv) the form and manner of notice of the Auction and Sale Hearing for the Sale, attached hereto as **Exhibit 3**.

L.    The Bidding Procedures were negotiated in good faith and at arms' length and are reasonably designed to promote participation and active bidding and ensure that the highest or best value is generated for the Purchased Assets.

M.    The Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in Bankruptcy Code section 101, and no common identity of incorporators, directors, or controlling stockholders exists between the Stalking Horse Bidder and the Debtors.  The Stalking Horse Bidder and its advisors have acted in "good faith" within the meaning of Bankruptcy Code section 363(m) in connection with the Stalking Horse Bidder's negotiation of its Bid Protections and the Bidding Procedures and the Stalking Horse Bidder's negotiation and entry into the Stalking Horse APA.

N.      The Assumption and Assignment Procedures are reasonable and appropriate and consistent with Bankruptcy Code section 365 and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures have been tailored to provide an adequate opportunity for all Contract Counterparties to the Potentially Assumed Contracts to raise any objections to the proposed assumption and assignment or to the cure amounts.

O.      The legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest herein.

P.      The form and manner of notice to be delivered pursuant to the Noticing Procedures (including the Sale Notice attached hereto as **Exhibit 3**) are reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction, the Sale Hearing, and the Sale (including the sale of the Purchased Assets (as set forth under the Stalking Horse APA) free and clear of any liens, claims, encumbrances, or interests pursuant to section 363(f) of the Bankruptcy Code) (with such liens, claims, encumbrances or interests attaching to the proceeds of any such sale with the same validity and priority as they attached to the Purchased Assets immediately prior to Closing), and any and all objection deadlines related thereto, and no other or further notice shall be required for the Sale Motion, the Sale, or the assumption and assignment of the Assigned Contracts except as expressly required herein.

Q.      The form and manner of the Potential Assumption and Assignment Notice, attached hereto as **Exhibit 4**, are adequately and reasonably calculated to provide due and adequate notice concerning the Assumption and Assignment Procedures and will provide due and adequate notice of the relief sough in the Sale Motion.

7

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND**

**DECREED THAT:**

1.       The relief requested in the Sale Motion is hereby granted to the extent set forth

herein.

2.       All objections to the Sale Motion solely as it relates to the relief requested therein

that have not been adjourned, withdrawn or resolved hereby are overruled in all respects on the

merits.

3.       The Bidding Procedures, in substantially the form attached hereto as **<u>Exhibit 2</u>**,

are approved and fully incorporated into this Order, and the Debtors are authorized, but not

directed, to act in accordance therewith.  The failure to specifically include a reference to any

particular provision of the Bidding Procedures in this Order shall not diminish or impair the

effectiveness of such provision.

4.       Subject to final Court approval at the Sale Hearing, the Sellers are authorized to

enter into Stalking Horse APA with the Stalking Horse Bidder.

5.       The schedule of events set forth below relating to the Bidding Procedures is

hereby approved in its entirety:

| | |
|---|---|
| November 1, 2019 at 11:00 a.m. (ET) | Bid Deadline<br>Deadline to Notify Qualified Bidders |
| November 1, 2019 at 4:00 p.m. (ET) | Sale Objection Deadline<br>Assumption and Assignment Objection Deadline (including the Stalking Horse Bidder's Ability to provide adequate assurance of future performance) |
| November 4, 2019 at 10:00 a.m. (ET) | Deadline to Designate a Baseline Bid<br>Auction (if necessary) |
| November 4, 2019 at 5:00 p.m. (ET) | Notice of Auction Results filed with the Court (if applicable) |
| November 4, 2019 at 4:00 p.m. (ET) | Debtors' Reply Deadline |
| November 5, 2019 at 10:00 a.m. (ET) | Sale Hearing |

| November 12, 2019 at 4:00 p.m. (ET) | Adequate Assurance Objection Deadline (for a Successful Bidder other than the Stalking Horse Bidder) |
| --- | --- |

6.    Noticing Procedures.  The Noticing Procedures as set forth in this Order and the Sale Motion, including the form of Sale Notice attached hereto as **Exhibit 3**, are hereby approved.  On the date of the entry of the Bidding Procedures Order, or as soon as reasonably practicable thereafter, the Debtors shall serve the Sale Notice by first-class mail upon the Sale Notice Parties.  On or about the same date, the Debtors will publish the Sale Notice on the Case Information Website.  Service of the Sale Notice on the Sale Notice Parties in the manner described in the Order constitutes good and sufficient notice of the Auction and the Sale Hearing. No other or further notice is required.

7.    Sale Objections.  Objections to the Sale must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than **November 1, 2019 at 4:00 p.m.**[3] and (d) be served on (1) proposed counsel to the Debtors, McDermott Will & Emery LLP, 340 Madison Ave New York, NY 10173 (Attn: Darren Azman and Ravi Vohra; dazman@mwe.com and rvohra@mwe.com), (2) counsel to the Committee, Kilpatrick Townsend & Stockton LLP, The Grace Building, 1114 Avenue of the Americas, New York, NY 10036-7703 (Attn: Todd C. Meyers; tmeyers@kilpatricktownsend.com) and Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street NE Suite 2800, Atlanta, GA USA 30309 (Attn: Colin M. Bernardino; cbernardino@kilpatricktownsend.com), (3) the U.S. Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, (4) counsel to the Stalking Horse Bidder, McGuireWoods LLP, 500 East Pratt Street, Suite 1000, Baltimore, MD 21202 (Attn: Cecil E. Martin III; cmartin@mcguirewoods.com), (5) counsel to BP Energy Company, Haynes & Boone LLP, 1221 McKinney Street, Suite 2100, Houston, TX 77010 (Attn:

---

[3] All times set forth herein are prevailing Eastern Time.

Kelli S. Norfleet; kelli.norfleet@haynesboone.com), and (6) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties"), with a copy to the Court's Chambers.

8.  Bid Deadline.  As further described in the Bidding Procedures, the Bid Deadline shall be at **11:00 a.m. on November 1, 2019**.

9.  Auction.  In the event the Debtors receive, on or before the Bid Deadline, at least one (1) Qualified Bid (other than the Stalking Horse Bid, which is a Qualified Bid), an Auction shall be conducted at the offices of McDermott Will & Emery LLP, 340 Madison Ave, New York, NY 10173 at **10:00 a.m. on November 4, 2019**, or such later time on such day or such other place as the Debtors shall notify all Qualified Bidder(s).  The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.

10.  Cancellation of Auction.  If the Debtors do not receive at least one (1) Qualified Bid (other than the Stalking Horse Bid), the Debtors, in their sole discretion, shall (i) notify the Stalking Horse Bidder, all Potential Bidders and the Bankruptcy Court in writing that (a) the Auction is cancelled and (b) the Stalking Horse Bid is the Successful Bid, and (ii) seek authority at the Sale Hearing to consummate the Sale in accordance with the Stalking Horse APA.

11.  Sale Hearing.  The Sale Hearing shall be held in the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, NY 10601-4140, at **10:00 a.m. on November 5, 2019** or such other date and time that the Court may later direct: *provided, however*, that the Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by filing a notice on the Court's docket.

10

12.     <u>Stalking Horse APA and Bid Protections</u>.  The form of Stalking Horse APA

attached hereto as **<u>Exhibit 1</u>** is hereby approved.  All of the Debtors' pre-closing obligations

under the Stalking Horse APA are authorized as set forth herein; *provided* that, for the avoidance

of doubt, consummation of the Sale contemplated by the Stalking Horse APA shall be subject to

entry of the Sale Order and the satisfaction or waiver of the other conditions to closing on the

terms set forth in the Stalking Horse APA.

13.     The Bid Protections are approved in their entirety, including, without limitation,

the Buyer Expense Reimbursement and Termination Fee payable in accordance with, and subject

to the terms of, the Stalking Horse APA, which such Buyer Expense Reimbursement shall be the

Stalking Horse Bidder's reasonable and documented expenses up to an aggregate amount of 1%

of $20 million, and which Termination Fee shall be an amount in cash equal to 4% of $20

million, in each case to be paid only out of the proceeds of an Alternative Transaction (as defined

in the Stalking Horse APA.  Except as expressly provided for herein, no other termination

payments are authorized or permitted under this Order.

14.     The Debtors are authorized and directed to pay the Buyer Expense

Reimbursement and/or Termination Fee, to the extent payable under the Stalking Horse APA,

without further order of this Court.  Each of the Buyer Expense Reimbursement and Termination

Fee, to the extent payable under the Stalking Horse APA, shall constitute an allowed super-

priority administrative expense claim senior to all other administrative expense claims against

the Debtors' estates pursuant to Bankruptcy Code sections 105(a), 503(b) and 507(a)(2), which

shall be payable only out of the proceeds of an Alternative Transaction (as defined in the

Stalking Horse APA).

11

15.     No Qualified Bidder or any other person or entity, other than the Stalking Horse Bidder, shall be entitled to any Buyer Expense Reimbursement, Termination Fee, or other similar termination fee, expense reimbursement, or payment in connection with the Sale, or any other form of bid protections.

16.     <u>Assumption and Assignment Procedures.</u>  The assumption and assignment procedures set forth in the Sale Motion (the "<u>Assumption and Assignment Procedures</u>") are hereby approved.

17.     The form of Potential Assumption and Assignment Notice, attached hereto as **<u>Exhibit 4</u>** is approved.  The Potential Assumption and Assignment Notice (i) contains the type of information required under Bankruptcy Rule 2002 that is currently known to the Debtors and (ii) is reasonably calculated to provide due, adequate and timely notice to all Contract Counterparties of (a) the potential assumption and assignment of the Potentially Assumed Contracts and rights thereunder and (b) the deadline to file objections to such assumption and assignment, the existence of any defaults, and/or adequate assurance of future performance.

18.     On the date of the entry of the Bidding Procedures Order, or as soon as reasonably practicable thereafter, the Debtors shall file with the Court and serve via first class mail or email on (i) all Contract Counterparties, (ii) the Sale Notice Parties, and (iii) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002, the Potential Assumption and Assignment Notice, attached hereto as **<u>Exhibit 4</u>** and file with the Court, and publish on the Case Information Website, the Executory Contract List.  If it is discovered that a Previously Omitted Contract should have been included on the Executory Contract List but was not, or in the event that the Debtors seek to modify a Cure Amount, the Debtors will promptly

12

file with the Court, and publish on the Case Information Website, a revised Executory Contract

List.

19.     <u>Objection Deadlines</u>.  Any Contract Counterparty may file an objection to the

calculation of Cure Amounts with respect to the Contract Counterparty's Potentially Assumed

Contract, or to the assumption and assignment to the Successful Bidder of the Contract

Counterparty's Potentially Assumed Contract, including the Stalking Horse Bidder's ability to

provide adequate assurance of future performance within the meaning of Bankruptcy Code

section 365(b)(1)(C) under the applicable Potentially Assumed Contract (any such objection, an

"<u>Assumption and Assignment Objection</u>").  All Assumption and Assignment Objections filed by

Contract Counterparties listed on the Executory Contract List (or any revised Executory Contract

List) filed with the Court must (a) be in writing, (b) comply with the Bankruptcy Code,

Bankruptcy Rules and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual

bases thereof, including, if applicable, the Cure Amount the Contract Counterparty believes is

required to cure defaults under the relevant Assumed Contract, (d) be filed by **November 1,**

**2019 at 4:00 p.m.** (the "<u>Assumption and Assignment Objection Deadline</u>") and (e) be served on

(1) proposed counsel to the Debtors, McDermott Will & Emery LLP, 340 Madison Avenue, New

York, NY 10173 (Attn: Darren Azman and Ravi Vohra; dazman@mwe.com and

rvohra@mwe.com), (2) counsel to the Committee, Kilpatrick Townsend & Stockton LLP, The

Grace Building, 1114 Avenue of the Americas, New York, NY 10036-7703 (Attn: Todd C.

Meyers; tmeyers@kilpatricktownsend.com) and Kilpatrick Townsend & Stockton LLP, 1100

Peachtree Street NE Suite 2800, Atlanta, GA USA 30309 (Attn: Colin M. Bernardino;

cbernardino@kilpatricktownsend.com), (3) the U.S. Trustee, U.S. Federal Office Building, 201

Varick Street, Suite 1006, New York, NY 10014 (Attn: Andrea B. Schwartz, Esq. and Shannon

13

Scott, Esq.; andrea.b.schwartz@usdoj.gov and shannon.scott2@usdoj.gov), (4) counsel to the

Stalking Horse Bidder, McGuireWoods LLP, 500 East Pratt Street, Suite 1000, Baltimore, MD

21202 (Attn: Cecil E. Martin III; cmartin@mcguirewoods.com), (5) counsel to BP Energy

Company, Haynes & Boone LLP, 1221 McKinney Street, Suite 2100, Houston, TX 77010 (Attn:

Kelli S. Norfleet and Kathryn Shurin; kelli.norfleet@haynesboone.com and

kathryn.shurin@haynesboone.com), and (6) any other party that has requested notice pursuant to

Bankruptcy Rule 2002 (collectively, the "Assumption and Assignment Objection Notice

Parties"), with a copy to the Court's Chambers.

20.     Resolution of Assumption and Assignment Objections.  If a Contract

Counterparty files a timely Assumption and Assignment Objection by the Assumption and

Assignment Objection Deadline and such objection is not resolved among the parties prior to the

Sale Hearing, the Court will hear and determine such objection at the Sale Hearing.

21.     Failure to File Timely Assumption and Assignment Objection.  If a Contract

Counterparty fails to file with the Court and serve on the Assumption and Assignment Objection

Notice Parties a timely Assumption and Assignment Objection, the Contract Counterparty shall

be (i) forever barred from (a) objecting to the assumption and assignment of the Potentially

Assumed Contract identified in the Executory Contract List, (b) asserting that any conditions to

the assumption and assignment of any Potentially Assumed Contract must be satisfied under

such Potentially Assumed Contract before such Potentially Assumed Contract may be assumed

and assigned, or that any consent required to any such assignment has not been given, or (c)

asserting that the Stalking Horse Bidder has failed to provide adequate assurance of future

performance as contemplated under Bankruptcy Code section 365(b)(l)(C) in respect of any such

Potentially Assumed Contract, (ii) deemed to have consented to the applicable Cure Amount, if

any, and be bound to such corresponding Cure Amount, (iii) deemed to have agreed that all

defaults under the applicable Potentially Assumed Contract arising or continuing prior to the

effective date of the assignment have been cured as a result or precondition of the assignment,

such that the neither the Successful Bidder nor the Debtors have any liability or obligation with

respect to any default occurring or continuing prior to the assignment, and that the applicable

Contract shall remain in full force and effect for the benefit of the Successful Bidder (and such

Contract Counterparty) in accordance with the terms of the Potentially Assumed Contract from

and after the date of the assignment of the applicable Potentially Assumed Contract, (iv) deemed

to have waived any right to terminate the applicable Contract or designate an early termination

date under the applicable Contract as a result of any default that occurred and/or was continuing

prior to the assignment date, and (v) deemed to have agreed to the terms of the Sale Order.

22.    <u>Adequate Assurance Objection</u>.  Immediately after the conclusion of the Auction,

if a Successful Bidder other than the Stalking Horse Bidder prevails at the Auction, the Debtors

shall file with the Court, and publish on the Case Information Website, the Notice of Auction

Results that identifies the Successful Bidder and provides notice that the Debtors will seek to

assume and assign the Potentially Assumed Contracts to the Successful Bidder.  The Notice of

Successful Bidder shall also contain the Successful Bidder's and Backup Bidder(s)' proposed

form of adequate assurance of future performance.  Objections of any Contract Counterparty

related to: (i) the identity of and ability of the Successful Bidder(s) or Backup Bidder(s) to

provide adequate assurance of future performance within the meaning of Bankruptcy Code

section 365(b)(l)(C) under the applicable Potentially Assumed Contract (an "<u>Adequate</u>

<u>Assurance Objection</u>") may be made at the Sale Hearing and, if not resolved at the Sale Hearing,

must (A) be in writing, (B) comply with the Bankruptcy Code, Bankruptcy Rules and Local

Bankruptcy Rules, (C) state, with specificity, the legal and factual bases thereof, (D) be filed by

no later than **November 12, 2019 at 4:00 p.m. (Eastern Time)** (the "Adequate Assurance

Objection Deadline") and (E) be served on the Assumption and Assignment Objection Notice

Parties, with a copy to the Court's Chambers.

23.     The inclusion of a Potentially Assumed Contract, or Cure Amounts with respect

thereto, on a Potential Assumption and Assignment Notice or the Executory Contract List shall

not constitute or be deemed a determination or admission by the Debtors, the Successful

Bidder(s) or any other party in interest that such contract or lease is an executory contract or

unexpired lease within the meaning of the Bankruptcy Code.  The Debtors reserve all of their

rights, claims and causes of action with respect to each Potentially Assumed Contract listed on

the Potential Assumption and Assignment Notice and Executory Contract List.  The Debtors'

inclusion of any Potentially Assumed Contract on the Potential Assumption and Assignment

Notice and Executory Contract List shall not be a guarantee that such Potentially Assumed

Contract ultimately will be assumed or assumed and assigned.

24.     The Debtors' assumption and assignment of the Potentially Assumed Contracts to

the Successful Bidder is subject to approval of this Court and the consummation of the Sale.

Accordingly, absent the closing of such Sale, the Assigned Contracts shall not be deemed

assumed or assigned, and shall in all respects be subject to further administration under the

Bankruptcy Code.

25.     General Provisions.  Except as otherwise provided in this Order or the Bidding

Procedures, the Debtors further reserve the right as they may reasonably determine to be in the

best interests of their estates (after consultation with the Consultation Parties (as defined in the

Bidding Procedures) to: (a) determine which bidders are Qualified Bidders; (b) determine which

16

bid are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best

proposal and which is the next highest or otherwise best proposal; (d) reject any bid that is (i)

inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures

or the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (e)

impose additional terms and conditions with respect to all potential bidders; (f) extend the

deadlines set forth herein; and/or (g) continue or cancel the Auction and/or Sale Hearing in open

court without further notice.  The Debtors also reserve the right to consult with the Stalking

Horse Bidder about extending the Bid Deadline or cancelling the Auction.

26.      For avoidance of doubt, in the event that the Stalking Horse Bidder does not

purchase the Purchased Assets, the Stalking Horse Bidder shall not use any of the Debtors'

confidential customer or broker information provided to it in connection with the Sale Motion

and the Purchased Assets.

27.      All persons or entities that participate in the bidding process or the Auction shall

be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this

Court with respect to all matters related to the terms and conditions of the Assets, the Auction

and any transaction contemplated herein.

28.      This Order shall be binding on the Debtors, including any chapter 7 or chapter 11

trustee or other fiduciary appointed for the estates of the Debtors.

29.      Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h),

6006(d), 7062 or 9014) or Local Bankruptcy Rule that might otherwise delay the effectiveness of

this Order is hereby waived, for cause, and the terms and conditions of this Order shall be

effective and enforceable immediately upon its entry.

30.    The requirements set forth in Local Rules 6004-1, 9006-1, and 9013-1 are hereby satisfied or waived.

31.    The Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order.  All matters arising from or related to the implementation of this Order may be brought before the Court as a contested matter, without the necessity of commencing an adversary proceeding.  To the extent any provisions of this Order shall be inconsistent with the Sale Motion or the Bidding Procedures, the terms of this Order shall control.

Dated:    White Plains, New York
          October 22, 2019                    /s/Robert D. Drain
                                              Robert D. Drain
                                              United States Bankruptcy Judge

## Exhibit 1

**Stalking Horse APA**

## **Exhibit 2**

**Proposed Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AGERA ENERGY LLC, *et al.*,[1] | ) | Case No. 19-23802 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## BIDDING PROCEDURES

      The above captioned debtors and debtors in possession (collectively, the "Debtors") in these jointly administered chapter 11 cases (collectively, the "Chapter 11 Cases") currently pending in the United States Bankruptcy Court for the Southern District of New York (the "Court") are authorized by the Court to conduct a sale of all or substantially all of the Debtors' assets.  On **October ___, 2019**, the Court entered the *Order (I)(A) Approving Bidding Procedures Relating to the Sale of Debtors' Assets, (B) Approving Stalking Horse Asset Purchase Agreement and Bid Protections, (C) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (D) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts, (E) Scheduling Auction for, and Hearing to Approve, Sale of the Debtors' Assets and (II) Granting Related Relief*, [ECF No. ___] (the "Bidding Procedures Order"), pursuant to which the Court, among other things, approved these Bidding Procedures (these "Bidding Procedures") to be employed to solicit and evaluate bids for the purchase of all or substantially all of the Debtors' assets (the "Assets").

      Exelon Generation Company, LLC submitted a stalking horse bid (the "Stalking Horse Bid" and such bidder, the "Stalking Horse Bidder"), which bid is for certain of Agera Energy LLC's, Aequitas Energy, Inc.'s and energy.me midwest llc's (collectively, the "Sellers") assets (the "Purchased Assets").  The Stalking Horse Bidder has executed that certain Asset Purchase Agreement (together with the exhibits thereto, and as may be amended, modified, or supplemented from time to time in accordance with the terms thereof, the "Stalking Horse APA"),[2] dated as of October 3, 2019.  The Stalking Horse APA contemplates, pursuant to the terms and subject to the conditions and purchase price adjustments contained therein, the sale of the Purchased Assets to the Stalking Horse Bidder in consideration of approximately $24,750,000.00 million in cash and cash consideration, plus the assumption of the Assumed Liabilities, subject to certain adjustments.

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Agera Energy LLC (8122); Agera Holdings, LLC (3335); energy.me midwest llc (9484); Aequitas Energy, Inc. (7988); Utility Recovery LLC (4351); and Agera Solutions LLC (8749).  The location of the Debtors' corporate headquarters and the service address for all Debtors is 555 Pleasantville Road, S-107, Briarcliff Manor, NY 10510.

[2] Capitalized terms used but not otherwise defined herein will have the meanings ascribed to them in the Stalking Horse APA.

The Stalking Horse Bid is subject to higher or better offers submitted in accordance with the terms and conditions of these Bidding Procedures. These Bidding Procedures describe, among other things: (i) the procedures for bidders to submit bids for the Purchased Assets; (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below); (iii) the negotiation of bids received; (iv) the conduct of the auction with respect to the Purchased Assets (the "Auction"); (v) the ultimate selection of the Successful Bidder (as defined below); and (vi) Bankruptcy Court approval of the sale of the Purchased Assets to the Successful Bidder at a hearing before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street White Plains, NY 10601-4140 (the "Sale Hearing").

**The Debtors reserve the right, in their discretion and subject to the exercise of their business judgment, after consultation with the Consultation Parties (as defined below), to modify or terminate these Bidding Procedures, to waive terms and conditions set forth herein, to extend any of the deadlines or other dates set forth herein, to adjourn the Auction and/or Sale Hearing, and/or, subject to the terms of the Stalking Horse APA, to terminate discussions with any and all prospective acquirers and investors (except for the Stalking Horse Bidder) at any time and without specifying the reasons therefor, in each case without further notice but in each case to the extent not materially inconsistent with these Bidding Procedures and/or the Bidding Procedures Order; and *provided* that nothing herein shall authorize the Debtors to unilaterally extend any date or deadlines set forth in the Stalking Horse APA or otherwise extend or enlarge the obligations of the Stalking Horse Bidder thereunder; and it being further understood that the Bidding Procedures and the Bidding Procedures Order must be in form and substance reasonably satisfactory to BP and, pursuant to the Stalking Horse APA, the Stalking Horse Bidder.**

### Summary of Important Dates

| | |
|---|---|
| November 1, 2019 at 11:00 a.m. (ET) | Bid Deadline Deadline to Notify Qualified Bidders |
| November 1, 2019 at 4:00 p.m. (ET) | Sale Objection Deadline Assumption and Assignment Objection Deadline (including the Stalking Horse Bidder's Ability to provide adequate assurance of future performance) |
| November 4, 2019 at 10:00 a.m. (ET) | Deadline to Designate a Baseline Bid Auction (if necessary) |
| November 4, 2019 at 5:00 p.m. (ET) | Notice of Auction Results filed with the Court (if applicable) |
| November 4, 2019 at 4:00 p.m. (ET) | Debtors' Reply Deadline |
| November 5, 2019 at 10:00 a.m. (ET) | Sale Hearing |
| November 12, 2019 at 4:00 p.m. (ET) | Adequate Assurance Objection Deadline (for a Successful Bidder other than the Stalking Horse Bidder) |

**Any interested bidder should contact, as soon as practicable:**

Stifel, Nicolaus & Co., Inc. and Miller Buckfire & Co., LLC ("Miller Buckfire") in writing, expressing your interest in the Purchased Assets to Richard Klein and James Georgiow of Miller Buckfire (richard.klein@millerbuckfire.com and jgeorgiow@stifel.com).

1.    **Due Diligence**

The Debtors have posted copies of all material documents related to the Debtors' businesses to the Debtors' confidential electronic data room (the "Data Room"), as well as the Stalking Horse APA.  To access the Data Room, a party must submit to the Debtors or their advisors:

> A.    an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;
>
> B.    if practicable, a description of the nature and extent of any due diligence the interested party wishes to conduct and the date in advance of the Bid Deadline (as defined below) by which such due diligence will be completed; and
>
> C.    sufficient information, as reasonably determined by the Debtors, to allow the Debtors, after consultation with the Consultation Parties, to determine that the interested party has the financial wherewithal to close a sale for the Purchased Assets.

An interested party that meets the above requirements to the satisfaction of the Debtors, after consultation with the Consultation Parties, shall be a "Potential Bidder."  As soon as practicable, the Debtors will provide such Potential Bidder access to the Data Room; *provided* that such access may be terminated by the Debtors in their discretion at any time for any reason whatsoever, after prior notice to, and after consultation with, the Consultation Parties, including that a Potential Bidder does not become a "Qualified Bidder" (as defined below) or these Bidding Procedures are terminated.

The Debtors shall keep the Consultation Parties reasonably informed of all interested parties that become Potential Bidders and the status of their due diligence.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate a sale transaction.  Failure by a Potential Bidder to comply with reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine, after consultation with the Consultation Parties, that a bid made by such Qualified Bidder is not a Qualified Bid.

Until the Bid Deadline (as defined below), the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be initially directed to:  (i) Richard Klein and James Georgiow of Miller Buckfire (richard.klein@millerbuckfire.com and jgeorgiow@stifel.com).  The Debtors will

3

simultaneously distribute to all Potential Bidders via the Data Room any additional diligence materials not previously available to other Potential Bidders. Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (a) the Potential Bidder does not become a Qualified Bidder or (b) these Bidding Procedures are terminated.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Debtors' businesses to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth above, or (iii) in the case of competitively sensitive information, is a competitor of the Debtors. Further, the Debtors shall have no obligation to provide due diligence access after the Bid Deadline (as defined below) to any party that has not submitted a Qualified Bid by the Bid Deadline.

## 2.    Bid Deadline

A Potential Bidder who desires to be deemed a Qualified Bidder must deliver the Required Bid Documents (as defined below) via email (in .pdf or similar format) so as to be *actually received* on or before **November 1, 2019 at 11:00 a.m. (prevailing Eastern Time)** (the "Bid Deadline") to the following parties (the "Debtor Notice Parties"):

a.    **Debtors**. c/o Agera Energy, LLC, 555 Pleasantville Road, S-107, Briarcliff Manor, NY 10510 (Attn: tsandford@ageraenergy.com).

b.    **Debtors' Counsel**. McDermott Will & Emery LLP, 340 Madison Ave., New York, New York 10173 (Attn: Darren Azman and Ravi Vohra; dazman@mwe.com and rvohra@mwe.com).

c.    **Debtors' Investment Banker**. Miller Buckfire, 787 7th Avenue, 5th Floor, New York, NY, 10019 (Attn: Richard Klein and James Georgiow; richard.klein@millerbuckfire.com and jgeorgiow@stifel.com).

d.    **Counsel to the Committee**. Kilpatrick Townsend & Stockton LLP, The Grace Building, 1114 Avenue of the Americas, New York, NY 10036-7703 (Attn: Todd C. Meyers; tmeyers@kilpatricktownsend.com) and Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street NE Suite 2800, Atlanta, GA USA 30309 (Attn: Colin M. Bernardino; cbernardino@kilpatricktownsend.com).

e.    **Counsel to BP Energy Company**. Haynes and Boone, LLP, 1221 McKinney Street, Suite 2100, Houston, TX 77010 (Attn: Kelli S. Norfleet and Kathryn Shurin; kelli.norfleet@haynesboone.com and kathryn.shurin@haynesboone.com).

The Debtors, in consultation with the Consultation Parties and the Stalking Horse Bidder, and without the need for further Court approval, may extend the Bid Deadline by a reasonable period of time once or successively if the Debtors believe that such extension would further the goal of attaining the highest or otherwise best offer for the Debtors' assets. The Debtors shall promptly notify all Potential Bidders of any such extension.

4

3.    **Qualified Bids**

Each offer, solicitation or proposal by a Potential Bidder must satisfy each of the following conditions to be deemed a "Qualified Bid," and for the Potential Bidder to be deemed a "Qualified Bidder," unless any such conditions that are not satisfied are waived by the Debtors. The Stalking Horse Bidder is a Qualified Bidder and the Stalking Horse Bid is a Qualified Bid.

a.    **Bid Requirements**

All bids must include the following items (collectively, the "Required Bid Documents"):

i.    Irrevocable.  Each bid must be accompanied by an executed letter stating that the bidder's offer is irrevocable until consummation of a transaction involving the assets identified in such bid and that such bidder agrees to serve as a Backup Bidder (as defined herein) in accordance with these Bidding Procedures.

ii.    Executed Agreement.  In both PDF and MS-WORD format, an executed copy of an asset purchase agreement (the "APA") and a copy of same that has been marked against the Stalking Horse APA, a copy of which is located in the Data Room.

iii.    Same or Better Terms.  Each bid must be an offer to purchase some or all of the Purchased Assets, pursuant to a sale transaction that is no less favorable to the Debtors' estates (except as to the Purchase Price and Schedule 2.01(a) of the Stalking Horse APA), as the Debtors may reasonably determine, in consultation with the Consultation Parties, than the transactions contemplated in the Stalking Horse APA.  To the extent that a bid contemplates the purchase of less than all of the Purchased Assets, such bid will only be considered a Qualified Bid if, when added to any other bids received (other than the Stalking Horse Bid) for any Purchased Assets not included in such bid, the aggregate total purchase price of such bids is equal to or greater than (i) the Stalking Horse Bidder's bid of $24,750,000.00, plus (ii) the Termination Fee, plus (iii) the maximum possible Buyer Expense Reimbursement payable under the Stalking Horse APA, plus (iv) an additional $250,000.

iv.    Financial Wherewithal.  Each Potential Bidder must provide written evidence acceptable to the Debtors, after consultation with the Consultation Parties, demonstrating financial wherewithal, operational ability and corporate authorization to consummate the proposed transaction.

v.    Committed Financing.  Each Potential Bidder must provide written evidence of a firm commitment for financing to consummate the proposed transaction, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Debtors, after consultation with the Consultation Parties.

A bid will be considered only if the bid:

i      identifies the legal name of the purchaser (including any sponsor(s), if the purchaser is an entity formed for the purpose of consummating the proposed transaction);

ii     identifies the Assets the bidder seeks to purchase and identifies the cash purchase price, and specifies how the cash purchase price is allocated among the Purchased Assets;

iii    is not materially more burdensome or more conditional than the terms of the Stalking Horse Bid, if any, as determined by the Debtors (after consultation with the Consultation Parties);

iv    identifies all executory contracts and unexpired leases of which the Potential Bidder seeks assignment from the Debtors, if any;

v     is not conditioned on (i) obtaining financing not already committed or (ii) the outcome of unperformed due diligence;

vi    is not conditioned on the receipt of any third party approvals or consents (excluding required Court approval and required governmental, licensing or regulatory approval or consent, if any), including without limitation board of director approval;

vii   with respect to any governmental, licensing or regulatory approvals or consents, includes a description of all such approvals or consents that are required to consummate the proposed transaction (including any antitrust approval or clearance related to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended), together with evidence satisfactory to the Debtors in their sole discretion of the ability of the bidder to obtain such approvals or consents in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such approvals or consents;

viii  is accompanied by a cash deposit by wire transfer to an escrow agent selected by the Debtors (the "Deposit Agent") in an amount equal to 10% of the cash purchase price set forth in connection with such bid (any such deposit, a "Good Faith Deposit");

ix    indicates that the bidder will not seek any transaction or break-up fee, expense reimbursement, or similar type of payment;

x     provides for a commitment to close as soon as practicable, but in no event later than the Closing would occur under the Stalking Horse APA;

| xi | sets forth the representatives that are authorized to appear and act on behalf of the bidder in connection with the proposed transaction; |
|---|---|
| xii | fully discloses the identity of each entity that will be bidding for the Debtors' assets or otherwise financing such bid (including through the issuance of debt in connection with such bid), and a summary of any such financing; |
| xiii | indicates that the bidder waives any substantial contribution administrative expense claims under Bankruptcy Code section 503(b) related to bidding for the Assets; |
| xiv | if the bid contemplates the assumption and assignment of any contracts or leases, includes evidence of the bidder's ability to comply with Bankruptcy Code section 365 (to the extent applicable), including providing adequate assurance of such bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Debtors and assigned to the bidder (the "Adequate Assurance Information"), in a form that will permit the Debtors to disseminate immediately such evidence to the Contract Counterparties to such contracts and leases that request such Adequate Assurance Information; |
| xv | constitutes a good faith, *bona fide* offer to effectuate the proposed transaction; and |
| xvi | is received on or before the Bid Deadline (as such deadline may be extended in accordance with these Bidding Procedures). |

The Debtors will determine, in consultation with the Consultation Parties, whether to entertain bids that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids.  The Debtors, in their sole and absolute discretion following consultation with the Consultation Parties, shall make a determination regarding whether a bid constitutes a Qualified Bid and shall notify bidders via email whether their bids have been determined to be Qualified Bids by no later than **November 1, 2019 at 11:00 a.m. (prevailing Eastern Time)**.

> **b.    Non-Conforming Bids**

The Debtors, after consultation with the Consultation Parties, shall have the right to deem a bid a Qualified Bid even if such bid does not conform to one or more of the requirements above or does not include one or more Required Bid Documents.  If the Debtors receive a bid prior to the Bid Deadline that is not a Qualified Bid, the Debtors may provide the bidder with the opportunity to remedy any deficiencies following the Bid Deadline but not later than one Business Day prior to the Auction.  If any bid is determined by the Debtors not to be a Qualified Bid, and the applicable bidder fails to remedy such bid in accordance with these Bidding Procedures, the Debtors shall promptly instruct the Deposit Agent to return such bidder's Good Faith Deposit.

### c.      Potential Bidder Representations

By submission of its bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (i) has not and will not engage in any collusion with respect to the bidding or the sale of any of the Purchased Assets as described herein, (ii) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets that are the subject of the Auction prior to making any such bids, (iii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid and (iv) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder(s), the asset purchase agreement(s) with such Successful Bidder(s).  Without the written consent of the Debtors, a Qualified Bidder may not amend, modify or withdraw its Qualified Bid, except for proposed amendments to increase the amount or otherwise improve the terms of its Qualified Bid, during the period that such Qualified Bid is required to remain irrevocable.

### d.      Distribution and Evaluation of Qualified Bids

All Qualified Bids will be considered by the Debtors; bids other than Qualified Bids will not be considered.  The Debtors may, after consultation with the Consultation Parties, evaluate bids on any grounds, including, but not limited to:

i       the amount of the purchase price, including non-cash consideration, set forth in the bid;

ii      the value to be provided to the Debtors under the bid, including the net economic effect upon the Debtors' estates;

iii     any benefit to the Debtors' bankruptcy estates from any assumption of liabilities;

iv      the transaction structure and execution risk, including conditions to and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

v       the anticipated timing to closing and whether such timing is consistent with the Debtors' adherence to, among other things, the Stalking Horse APA;

vi      the impact on employees and employee claims against the Debtors;

vii     the presence of any governmental, licensing, regulatory or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents;

viii    the impact on trade and other creditors; and

ix       any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties.

For the avoidance of doubt, the presence of any governmental, licensing, regulatory or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, may be grounds for the Debtors, in their sole discretion, to determine that such bid (i) is not a Qualified Bid or (ii) is not higher or otherwise better than any other Qualified Bid.

In evaluating the bids, the Debtors, after consultation with the Consultation Parties, shall also make a determination regarding which Qualified Bid(s) is the highest or best Qualified Bid for the Purchased Assets and will therefore serve as the starting point at the Auction (the "Baseline Bids" and, each, a "Baseline Bid").  To the extent the Baseline Bid(s) is not the Stalking Horse Bid, the Baseline Bid(s) must collectively exceed the Stalking Horse Bidder's bid of $24,750,000.00, plus the Termination Fee, plus the maximum possible amount of the Buyer Expense Reimbursement, plus an additional amount of two hundred fifty thousand dollars ($250,000).  No later than **November 1, 2019**, the Debtors shall distribute a detailed summary of all Qualified Bids received by the Debtors to all Qualified Bidders (including the Stalking Horse Bidder), including a valuation of all components of such Qualified Bids.  The Debtors shall provide a redacted version of the full asset purchase agreements submitted by such Qualified Bidders to all other Qualified Bidders upon request within one (1) business day of the Bid Deadline.

On or before **November 4, 2019 at 10:00 a.m. (prevailing Eastern Time)** (the "Designation Deadline"), the Debtors shall designate the Baseline Bid and distribute the same at the Auction.  The Debtors shall also provide copies of such Baseline Bid to all of the Qualified Bidders (including the Stalking Horse Bidder) and each of the Consultation Parties.  To the extent the Baseline Bid(s) is not the Stalking Horse Bid, the Debtors shall also provide to all Qualified Bidders (including the Stalking Horse Bidder) and each of the Consultation Parties a detailed calculation of the value of the Qualified Bid(s) comprising the Baseline Bid(s).

**4.**    **Auction**

**a.**    **Scheduled Time and Date of the Auction**

One or more auctions for the Assets (the "Auction") may be held in accordance with these Bidding Procedures and upon notice to all Qualified Bidders that have submitted Qualified Bids.  The Auction, if held, is scheduled to be conducted at the offices of McDermott Will & Emery LLP, 340 Madison Ave., New York, New York 10173 **on November 4, 2019 at 10:00 a.m. (prevailing Eastern Time)**, or such later time or other location as designated by the Debtors in a notice filed on the docket of the Court and published on the Debtors' case information website (located at **https://cases.stretto.com/agera** (the "Case Information Website")).

If no Qualified Bid (other than the Stalking Horse Bid) is submitted by the Bid Deadline with respect to the Assets or any lot of assets, the Debtors may, after consultation with the Consultation Parties and the Stalking Horse Bidder, elect to cancel the Auction with respect to

such assets and, as applicable, seek approval of the transactions contemplated in the Stalking Horse Bid at the Sale Hearing (as defined below).

### b.      Participants and Attendees

Principals, representatives or agents of the Debtors, BP, the Stalking Horse Bidder, the Committee, and any Qualified Bidder that has submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing) will be entitled to attend the Auction.  Any other creditor of the Debtors will be permitted to attend the Auction upon advance notice by such creditor of at least two (2) business days to the Debtor Notice Parties.  Only Qualified Bidders will be entitled to make any subsequent bids at the Auction.  Each Qualified Bidder participating in the Auction must confirm that it (a) has not and will not engage in any collusion with respect to the bidding or the sale of any of the Purchased Assets as described herein, (b) has reviewed, understands and accepts these Bidding Procedures, (c) has consented to the jurisdiction of the Court and (d) intends to consummate its Qualified Bid if it is selected as the Successful Bid. Each Qualified Bidder participating in the Auction shall appear in person at the Auction or through a duly authorized representative.

### c.      Auction Procedures

To the extent the Baseline Bid(s) is not the Stalking Horse Bid, the Baseline Bid(s) must collectively exceed the Stalking Horse Bidder's bid of $24,750,000.00, plus the Termination Fee, plus the maximum possible amount of the Buyer Expense Reimbursement, plus an additional amount of two hundred fifty thousand dollars ($250,000);

Bidding at the Auction will begin with the Baseline Bid(s) and continue, in one or more rounds of bidding, so long as, during each round, at least one subsequent bid is submitted by a Qualified Bidder(s) that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (an "Overbid") and (ii) the Debtors determine, in consultation with the Consultation Parties, that such Overbid or combination of Overbids is (a) for the first round, a higher or otherwise better offer than the Baseline Bid(s) (taking into account, if applicable, the Buyer Expense Reimbursement and Termination Fee for the Stalking Horse Bidder) and (b) for subsequent rounds, a higher or otherwise better offer than the Leading Bid(s) (as defined below).

After the first round of bidding and between each subsequent round of bidding, the Debtors will determine, after consultation with the Consultation Parties, and announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (the "Leading Bid"), as well as provide a detailed calculation of the value of such Leading Bid.  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge and written confirmation of the Leading Bid.

In connection with any of its bids at the Auction, the Stalking Horse Bidder shall receive a credit equal to the aggregate of (i) the Termination Fee and (ii) the maximum possible amount of the Buyer Expense Reimbursement payable by the Debtors pursuant to the Stalking Horse APA.  Additionally, to the extent bids are submitted at the Auction for less than all of the Purchased Assets contemplated by the Stalking Horse APA, in accordance with and as permitted

by these Bidding Procedures, the Stalking Horse Bidder shall have the right, but not the obligation, to elect to bid on less than all of such Purchased Assets.

The Debtors, in their sole discretion and in consultation with the Consultation Parties and the Stalking Horse Bidder, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, including, but not limited to, bidding increments and other requirements for each round of bidding, provided that such rules are (A) not materially inconsistent with the order entered by the Court approving these Bidding Procedures, the Bankruptcy Code or any other order of the Court entered in connection herewith and (B) disclosed to each Qualified Bidder.

The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Baseline Bid(s), all subsequent bid(s), the Leading Bid(s), the Backup Bid(s) and the Successful Bid(s) (each as defined below).

### d.    Selection of Successful Bid(s)

Prior to the conclusion of the Auction, the Debtors shall (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale transaction, (b) determine and identify, with the Consultation Parties, the highest or otherwise best offer or collection of offers (the "Successful Bid(s)"), (c) determine and identify, with the Consultation Parties, the next highest or otherwise best offer or collection of offers (the "Backup Bid(s)") and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the identity of the party or parties that submitted the Successful Bid(s) (the "Successful Bidder(s)"), the amount and other material terms of the Successful Bid(s), the identity of the party or parties that submitted the Backup Bid(s) (the "Backup Bidder(s)") and the amount and other material terms of the Backup Bid(s).  No additional bids may be considered after the Auction is closed.  If, following the Auction, the Stalking Horse Bidder is not the Successful Bidder, then the Debtors will (a) file a notice (such notice being the "Notice of Auction Results") on **November 4, 2019 at 5:00 p.m. (ET)**, which will, among other things, include the identity of the Successful Bidder(s) and Backup Bidder(s), with the Court and cause such notice to be published on the Case Information Website, which shall contain the Successful Bidder(s)' and Backup Bidder(s)' proposed form of adequate assurance of future performance and constitute definitive proof that the Debtors have closed the Auction.

The Backup Bid shall remain open and irrevocable until the earliest to occur of (i) the Closing Date, and (ii) the release of such bid by the Debtors in writing (such date, the "Backup Bid Expiration Date").  If a transaction with the Successful Bidder is terminated prior to the Backup Bid Expiration Date, the Back-Up Bidder shall be deemed the Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bid.

Notwithstanding anything to the contrary set forth in these Bidding Procedures, the Stalking Horse Bidder shall not be required to serve as the Backup Bidder for anything less than all of the Purchased Assets contemplated by the Stalking Horse APA.

11

5.      **Termination Fee and Buyer Expense Reimbursement**

The Debtors have agreed that they must pay the Termination Fee and Buyer Expense Reimbursement (as defined in the Stalking Horse APA) to the Stalking Horse Bidder under certain conditions and circumstances as set forth in the Stalking Horse APA.  Payment of the Termination Fee and Buyer Expense Reimbursement shall be governed by the Stalking Horse APA and the Bidding Procedures Order.

6.      **Consultation Parties**

The term "Consultation Parties" as used in these Bidding Procedures shall mean (i) the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases, if any (the "Committee") and (ii) BP.

The Debtors shall use their reasonable best efforts to consult and confer with the Consultation Parties in respect of all material aspects of the bidding and Auction process in order to maximize value for all parties in interest.  For the avoidance of doubt, however, the consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

The Debtors may not modify the consultation or consent rights of any of the Consultation Parties set forth herein without the consent of such affected party; *provided*, *however*, that the Debtors may, in the exercise of their business judgment, take such steps as are necessary to ensure a competitive and transparent bidding and Auction process, including, but not limited to, limiting (but not eliminating) the consultation rights of a Consultation Party that is or becomes a Qualified Bidder.

7.      **The Sale Hearing**

The hearing to consider the proposed Sale Order (the "Sale Hearing") shall be held on **November 5, 2019 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Robert D. Drain in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street White Plains, NY 10601-4140.

The Sale Hearing may be adjourned by the Debtors by an announcement of the adjourned date at a hearing before the Court or by filing a notice on the Court's docket.  At the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid(s) and, in their sole discretion, the Backup Bid(s).

The Debtors' presentation to the Court of the Successful Bid(s) and Backup Bid(s) will not constitute the Debtors' acceptance of such bid(s), which acceptance will only occur upon approval of such bid(s) by the Court.  Following the Court's entry of the Sale Order approving such bid(s), the Debtors and the Successful Bidder(s) shall proceed to consummate the transaction(s) contemplated by the Successful Bid(s).  If the Debtors and the Successful Bidder(s) fail to consummate the proposed transaction(s), then the Debtors shall file a notice with the Court advising of such failure.  Upon the filing of such notice with the Court, the

12

Backup Bid(s) will be deemed to be the Successful Bid(s) and the Debtors will be authorized but not directed, in their sole discretion, to effectuate the transaction(s) with the Backup Bidder(s) subject to the terms of the Backup Bid(s) of such Backup Bidder(s) without further order of the Court.  If such failure to consummate the sale is the result of a breach by the Successful Bidder(s) (such bidder(s), the "Breaching Bidder(s)") of its (their) purchase agreement(s), the Debtors reserve the right to seek all available remedies from the Breaching Bidder(s), subject to the terms of the applicable purchase agreement.

## 8.    Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Deposit Agent and will not become property of the Debtors' bankruptcy estates unless released from escrow pursuant to the terms of the applicable escrow agreement or pursuant to further order of the Court.  The Deposit Agent will retain the Good Faith Deposits of the Successful Bidder(s) and the Backup Bidder(s) until the closing of the transaction(s) contemplated by the Successful Bid(s) or the Backup Bid(s), as applicable, in accordance with Section 4.d. above, except as otherwise ordered by the Court.  The Good Faith Deposits (and all interest accrued thereon) of the other Qualified Bidders will be returned within four Business Days after the entry of the Sale Order.  At the closing of the transaction contemplated by the Successful Bid(s), the Successful Bidder(s) will receive a credit in the amount of its Good Faith Deposit (plus all interest accrued thereon).  All remaining Good Faith Deposits (and all interest accrued thereon) held by the Deposit Agent will be released by the Deposit Agent four Business Days after the closing of the transaction(s) contemplated by the Successful Bid(s); *provided*, the Deposit Agent will retain the Good Faith Deposit of a Breaching Bidder pending a ruling by the Court as to the amount of damages owed, if any, by such Breaching Bidder to the Debtors.

## 9.    As Is, Where Is

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or their estates, except as provided in any agreement with respect to the sale or sales approved by the Court.

## 10.    Free and Clear of Any and All Interests

All of the Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests") to the maximum extent permitted by Bankruptcy Code section 363, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Interests attached to the Assets immediately prior to Closing.

## 11.    Reservation of Rights of the Debtors

Except as otherwise provided in these Bidding Procedures or the Bidding Procedures Order, the Debtors reserve the right, after consultation with the Consultation Parties to:

> i    determine which interested party is a Potential Bidder;

13

ii     determine which bidder is a Qualified Bidder;

iii    determine which bid is a Qualified Bid;

iv     determine which Qualified Bid is a Baseline Bid;

v      determine which Qualified Bid is the highest or otherwise best offer for the Purchased Assets and which is the next highest or otherwise best offer;

vi     reject any bid that the Debtors deem to be (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules or (c) contrary to the best interests of the Debtors and their estates;

vii    impose additional terms and conditions with respect to all Potential Bidders;

viii   cancel the Auction;

ix     extend the deadlines set forth herein; and

x      modify these Bidding Procedures and implement additional procedural rules that the Debtors determine will better promote the goals of the bidding process and discharge the Debtors' fiduciary duties.

The Debtors also reserve the right to consult with the Stalking Horse Bidder about extending the Bid Deadline or cancelling the Auction.

Nothing in these Bidding Procedures shall require the Debtors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent that the Debtors determine, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or their fiduciary duties under applicable law.

## Exhibit 3

**Form of Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AGERA ENERGY LLC, *et al.*,[1] | ) | Case No. 19-23802 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "Court") on October 4, 2019 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE** that, on the Petition Date, the Debtors filed a motion (the "Sale Motion"),[2] [ECF No. 16], with the Court seeking entry of orders, among other things, approving (a) procedures for the solicitation of bids in connection with the proposed sale of substantially all of the Debtors' assets (the "Sale"), subject to the submission of higher or otherwise better offers in an auction process (the "Auction"), (b) the form and manner of notice related to the Sale and (c) procedures for the assumption and assignment of contracts and leases in connection with the Sale.

**PLEASE TAKE FURTHER NOTICE** that a party (the "Stalking Horse Bidder") has already submitted a binding bid (the "Stalking Horse Bid") for certain of the Assets, as set forth in a certain asset purchase agreement (the "Stalking Horse APA"). The Stalking Horse Bid remains subject to higher and/or better offers.

**PLEASE TAKE FURTHER NOTICE** that, on _____ ____, 2019, the Court entered an order (the "Bidding Procedures Order"), [ECF No. __], approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale and the Auction. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Agera Energy LLC (8122); Agera Holdings, LLC (3335); energy.me midwest llc (9484); Aequitas Energy, Inc. (7988); Utility Recovery LLC (4351); and Agera Solutions LLC (8749). The location of the Debtors' corporate headquarters and the service address for all Debtors is 555 Pleasantville Road, S-107, Briarcliff Manor, NY 10510.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

## Contact Persons for Parties Interested in Submitting a Bid

The Bidding Procedures set forth the requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase the Assets must comply strictly with the Bidding Procedures.  Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

**Any interested bidder should contact, as soon as practicable:**

Stifel, Nicolaus & Co., Inc. and Miller Buckfire & Co., LLC ("Miller Buckfire") (Attn: Richard Klein and James Georgiow; richard.klein@millerbuckfire.com and jgeorgiow@stifel.com).

## Obtaining Additional Information

Copies of the Stalking Horse APA, the Bidding Procedures Order, the Bidding Procedures, and the proposed Sale Order are available upon request to the Debtors' noticing agent, Stretto, at https://cases.stretto.com/agera.

## Important Dates and Deadlines[4]

(i)     **Bid Deadline**.  The deadline to submit a Qualified Bid is **November 1, 2019 at 11:00 a.m. (prevailing Eastern Time)**.

(ii)    **Sale Objection Deadline**.  The deadline to file an objection with the Court to the Sale, and all objections relating to the Stalking Horse Bidder, or the Sale (collectively, the "Sale Objection") is **November 1, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline").

(iii)   **Auction**.  In the event that the Debtors timely receive a Qualified Bid in addition to the Stalking Horse Bid, and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction for the Assets.  The Auction, if one is held, will commence on **November 4, 2019 at 10:00 a.m. (prevailing Eastern Time)** at the offices of McDermott Will and Emery, 340 Madison Avenue, New York, New York 10173.

(iv)    **Sale Hearing**.  A hearing (the "Sale Hearing") to consider the proposed Sale will be held before the Court on **November 5, 2019 at 10:00 a.m. (prevailing Eastern Time)**, or such other date as determined by the Court, at 300 Quarropas Street White Plains, NY 10601-4140.

## Filing Objections

Sale Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than **the Sale Objection Deadline** and (d) be served on (1) proposed counsel to the Debtors, McDermott Will & Emery LLP, 340

---

[4] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

Madison Avenue, New York, NY 10173 (Attn: Darren Azman and Ravi Vohra; dazman@mwe.com and rvohra@mwe.com), (2) counsel to the Committee, Kilpatrick Townsend & Stockton LLP, Kilpatrick Townsend & Stockton LLP, The Grace Building, 1114 Avenue of the Americas, New York, NY 10036-7703 (Attn: Todd C. Meyers; tmeyers@kilpatricktownsend.com) and Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street NE Suite 2800, Atlanta, GA USA 30309 (Attn: Colin M. Bernardino; cbernardino@kilpatricktownsend.com), (3) the U.S. Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Andrea B. Schwartz, Esq. and Shannon Scott, Esq.; andrea.b.schwartz@usdoj.gov and shannon.scott2@usdoj.gov), (4) counsel to the Stalking Horse Bidder, McGuireWoods LLP, 500 East Pratt Street, Suite 1000, Baltimore, MD 21202 (Attn: Cecil E. Martin III; cmartin@mcguirewoods.com), (5) counsel to BP Energy Company, Haynes & Boone LLP, 1221 McKinney Street, Suite 2100, Houston, TX 77010 (Attn: Kelli S. Norfleet and Kathryn Shurin; kelli.norfleet@haynesboone.com and kathryn.shurin@haynesboone.com), and (6) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties"), with a copy to the Court's Chambers.

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any party or entity who fails to timely make an objection to the Sale on or before the Sale Objection Deadline in accordance with the Bidding Procedures Order and this Notice shall be forever barred from asserting any objection to the Sale, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests.*

## NO SUCCESSOR LIABILITY

*For more information on the Debtors' business, refer to the Declaration of Todd Sandford Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration") [ECF No. 3]. Upon Court approval, the Sale will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale. Accordingly, as a result of the Sale, the Successful Bidder will not be a successor to any of the Debtors by reason of any theory of law or equity, and the Successful Bidder will have no liability, except as expressly provided in the Purchase Agreement, for any liens, claims, encumbrances and other interests against or in any of the Debtors under any theory of law, including successor liability theories.*

*[Remainder of This Page Intentionally Left Blank]*

3

Dated:  October __, 2019
        New York, NY

McDermott Will & Emery LLP

/s/
Timothy W. Walsh
Darren Azman
Ravi Vohra
340 Madison Avenue
New York, NY 10173
Telephone:  (212) 547-5615
Facsimile:  (212) 547-5444
Email: dazman@mwe.com
        rvohra@mwe.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

## **Exhibit 4**

**Form of Potential Assumption and Assignment Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AGERA ENERGY LLC, *et al.*,[1] | ) | Case No. 19-23802 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT

**You are receiving this Notice because you may be a retail electricity or natural gas customer of Agera Energy LLC, energy.me midwest llc (d/b/a Energy Me), or Aequitas Energy Inc. (collectively, the "Agera Opco Entities"). The Agera Opco Entities are Debtors in the above captioned chapter 11 cases (collectively, with its subsidiaries and affiliates that commenced chapter 11 cases, the "Debtors"). Please read this notice carefully as your rights may be affected by the transactions described herein.**

If you have questions concerning this notice, please contact your sales representative or call the Agera Opco Entities' customer service center at (877) 273-7276. Residential customers with questions about their rights as a consumer of electricity under state law and regulations may contact their state regulator or residential consumer representative.

On October 4, 2019, the Debtors filed voluntary petitions for chapter 11 relief in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Since commencing the chapter 11 cases, the Debtors have continued to operate their businesses, and have continued to provide your electricity or natural gas service, as usual. As part of their restructuring efforts, the Agera Opco Entities are seeking to sell certain of their assets (the "Assets"), which may include the Agera Opco Entities' contracts (including any renewals or extensions thereof) with customers of their retail power and natural gas businesses such as yourself (collectively, the "Customer Contracts"). The Bankruptcy Court has approved a motion filed by the Debtors to establish procedures (the "Bidding Procedures") to select a purchaser for the Assets, who will be providing you service instead of the Agera Opco Entities.

The Agera Opco Entities have actively sought another qualified electricity and natural gas supplier to purchase their customers' contracts and provide uninterrupted service to their customers. On October 3, 2019, the Agera Opco Entities received an offer to purchase the Assets from Exelon Generation Company, LLC ("Exelon"). Your contract (and any renewals or extensions thereof) with the applicable Agera Opco Entity may be transferred to Exelon. The transfer and assignment of your contract will occur as soon as possible after the transaction

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Agera Energy LLC (8122); Agera Holdings, LLC (3335); energy.me midwest llc (9484); Aequitas Energy, Inc. (7988); Utility Recovery LLC (4351); and Agera Solutions LLC (8749). The location of the Debtors' corporate headquarters and the service address for all Debtors is 555 Pleasantville Road, S-107, Briarcliff Manor, NY 10510.

closes. Additional information regarding Exelon may be obtained from counsel to the Debtors, McDermott Will & Emery LLP, 340 Madison Ave New York, NY 10173 (Attn: Darren Azman and Ravi Vohra; dazman@mwe.com and rvohra@mwe.com). You have a right to request that Exelon provide you with adequate assurance of future performance (*i.e.*, information that will allow you to evaluate whether Exelon will be able to deliver uninterrupted electricity or natural gas to you following the successful transfer and assignment of your Customer Contract to Exelon).

The Agera Opco Entities have established procedures to transfer their Customer Contracts to Exelon. The procedures include a process to ensure that retail customers, such as yourself, receive notice that their Customer Contracts will be transferred and assigned to Exelon. **Exelon is a qualified competitive energy supplier[2] that has agreed to provide your electricity and natural gas service on the same rates, terms and conditions in your current customer contract with the applicable Agera Opco Entity. Other than the change in your retail energy supplier, your electricity and natural gas service will NOT be affected by this sale. You may have related rights as a consumer of electricity under state law and regulations (as those rights may be impacted by the Chapter 11 Cases)**.

Exelon's offer is subject to higher and better offers at an auction (the "Auction") that will take place on **November 4, 2019** if the Debtors receive at least one (1) Qualified Bid (as defined in the Bidding Procedures) other than Exelon's bid. If a Qualified Bidder (as defined in the Bidding Procedures) other than Exelon submits the highest bid at the Auction, your Customer Contract may be assumed and assigned to such Qualified Bidder.

If a Qualified Bidder other than Exelon prevails at the Auction, the Debtors will file a Notice of Auction Results (as defined in the Bidding Procedures) with the Bankruptcy Court on **November 4, 2019**, identifying the Successful Bidder(s) and Backup Bidder(s) (as defined in the Bidding Procedures). The Notice of Auction Results will also include the Successful Bidder(s)' and Backup Bidder(s)' proposed form of adequate assurance of future performance (*i.e.*, information that will allow you to evaluate whether the Successful Bidder(s) or Backup Bidder(s) will be able to deliver uninterrupted electricity or natural gas to you following the successful transfer and assignment of your Customer Contract to the Successful Bidder or Backup Bidder(s)). You have a right to file an objection related to: (i) the identity of and ability of the Successful Bidder(s) or Backup Bidder(s) to provide adequate assurance of future performance or (ii) the ability of the Stalking Horse Bidder to provide adequate assurance of future performance with respect to your Customer Contract (an "Adequate Assurance Objection").

A schedule of each Customer Contract you have with any Agera Opco Entity that may be transferred and assigned to Exelon, along with any proposed "Cure Amounts" necessary for the assumption and assignment of your contract(s), is attached hereto as **Exhibit A**. A complete schedule listing all of the Customer Contracts (the "Executory Contract List" ) that may be transferred and assigned to Exelon will be filed with the Bankruptcy Court as soon as practicable after **October 18, 2019**. You may review or obtain a copy of the Executory Contract List by (a)

---

[2] A competitive retail energy supplier sells electricity and natural gas in regulated energy markets to residential, commercial and industrial end-use customers in your applicable state.

visiting the Court's website at https://pcl.uscourts.gov/pcl/index.jsf for a fee, (b) the Debtors' case information website, located at https://cases.stretto.com/agera, or (c) emailing teamagera@stretto.com. ***Each Cure Amount listed on <u>Exhibit A</u> and the Executory Contract List represents all liabilities of any nature that the Debtors believe they have arising under a Customer Contract prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale. <u>If you believe your Cure Amount is listed with an incorrect amount on Exhibit A, you must object in accordance with the procedures described in this Notice.</u>***

**Please be assured that there will be no interruption of service under your electricity or natural gas contract as a result of this sale process. You will not need to take any action to switch to Exelon or a Successful Bidder. To the extent that you receive an invoice directly from the applicable Agera Opco Entity, you will be advised of a new payment address.**

**If you do not wish to object to the transfer of your Customer Contract to Exelon or a Successful Bidder, on the same rates, terms and conditions that you have already agreed to with the Agera Opco Entities, you do not need to take any action in response to this notice. As stated above, only the provider of your service will change, and you will see its name and/or logo on your bills going forward after assignment. Your service will continue on the same rates, terms and conditions in your current electric service contract. For any accounts currently invoiced by the Agera Opco Entities, you will be advised of a new payment address**. Be aware that, if you do not file an objection to the assignment of your Customer Contract, including any objection relating to the Cure Amount and the ability of Exelon to provide you with adequate assurance of future performance (an "<u>Assumption and Assignment Objection</u>") by **November 1, 2019 at 4:00 p.m. (prevailing Eastern Time)**, you will not be able to object to the transfer and assignment later in these Chapter 11 Cases. As noted above, you may have related rights as a consumer of electricity under state law and regulations (as those rights may be impacted by the Chapter 11 Cases).

If you object to the transfer of your Customer Contract to Exelon, your objection must (i) be in writing, (ii) be filed with the Bankruptcy Court, and (iii) be served as described below, so as to be actually received by **November 1, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Assumption and Assignment Objection Deadline</u>"). If you file an objection you must clearly explain the reason for your objection. All objections to the proposed assignment of your Customer Contract will be heard by the Bankruptcy Court at the Sale Hearing.

The Sale Hearing will take place before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court, Southern District of New York, 300 Quarropas Street White Plains, NY 10601-4140 on **November 5, 2019 at 2:00 p.m. (prevailing Eastern Time)**. A summary of the important dates and deadlines is below:

| | |
|---|---|
| November 1, 2019 at 4:00 p.m. | Sale Objection Deadline and Assumption and Assignment Objection Deadline (including Exelon's ability to provide you with adequate assurance of future performance) |

| November 4, 2019 at 5:00 p.m. | Notice of Auction Results (if applicable) |
|---|---|
| November 5, 2019 at 10:00 a.m. | Sale Hearing regardless of whether the Auction is conducted |
| November 12, 2019 at 4:00 p.m. (ET) | Adequate Assurance Objection Deadline (for a Successful Bidder other than Exelon) |

### **Filing Objections**

Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Amount that the Contract Counterparty believes is required to cure defaults under the relevant Customer Contract, (d) be filed with the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Room 248, White Plains, NY 10601-4140, by no later than **November 1, 2019 at 4:00 p.m. (prevailing Eastern Time)** and (e) be served on (1) proposed counsel to the Debtors, McDermott Will & Emery LLP, 340 Madison Avenue, New York, NY 10173 (Attn: Darren Azman and Ravi Vohra; dazman@mwe.com and rvohra@mwe.com), (2) counsel to the Committee, Kilpatrick Townsend & Stockton LLP, The Grace Building, 1114 Avenue of the Americas, New York, NY 10036-7703 (Attn: Todd C. Meyers; tmeyers@kilpatricktownsend.com) and Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street NE Suite 2800, Atlanta, GA USA 30309 (Attn: Colin M. Bernardino; cbernardino@kilpatricktownsend.com), (3) the U.S. Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Andrea B. Schwartz, Esq. and Shannon Scott, Esq.; andrea.b.schwartz@usdoj.gov and shannon.scott2@usdoj.gov), (4) counsel to the Stalking Horse Bidder, McGuireWoods LLP, 500 East Pratt Street, Suite 1000, Baltimore, MD 21202 (Attn: Cecil E. Martin III; cmartin@mcguirewoods.com), (5) counsel to BP Energy Company, Haynes & Boone LLP, 1221 McKinney Street, Suite 2100, Houston, TX 77010 (Attn: Kelli S. Norfleet and Kathryn Shurin; kelli.norfleet@haynesboone.com and kathryn.shurin@haynesboone.com), and (6) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties").

Adequate Assurance Objections for a Successful Bidder other than Exelon may be made at the Sale Hearing and, if not resolved at the Sale Hearing, must (A) be in writing, (B) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (C) state, with specificity, the legal and factual bases thereof, (D) be filed with the Court as provided in the preceding paragraph by **November 12, 2019 at 4:00 p.m. (prevailing Eastern Time) on November 4, 2019** and (E) be served on the Assumption and Assignment Objection Notice Parties.

Sale Objections, if any, must (A) be in writing, (B) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules (C) state, with specificity, the legal and factual bases thereof, (D) be filed with the Court by no later than **the Sale Objection Deadline** and (E) be served on Objection Notice Parties.

Dated:  October 18, 2019                              **MCDERMOTT WILL & EMERY LLP**
New York, NY

/s/ Darren Azman
Timothy W. Walsh
Darren Azman
Ravi Vohra
340 Madison Avenue
New York, NY 10173
Telephone:  (212) 547-5615
Facsimile:  (212) 547-5444
Email: dazman@mwe.com
          rvohra@mwe.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*