Hearing Date: March 23, 2020 at 2:00 p.m. (ET)
Objections Due: March 16, 2020 at 4:00 p.m. (ET)

**MCDERMOTT WILL & EMERY LLP**
Timothy W. Walsh
Darren Azman
Ravi Vohra
340 Madison Avenue
New York, New York 10173
Telephone: (212) 547-5615
Facsimile: (212) 547-5444

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AGERA ENERGY LLC, *et al.*,[1] | ) | Case No. 19-23802 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF HEARING ON DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER APPROVING THE TERMS OF SETTLEMENT BY AND BETWEEN AGERA AND BOSTON GAS COMPANY AND/OR COLONIAL GAS COMPANY**

        **PLEASE TAKE NOTICE** that on March 2, 2020, the above-captioned debtors and

debtors in possession (collectively, the "Debtors"), filed the *Debtors' Motion Pursuant to Section*

*105(a) of the Bankruptcy Code and Fed. R. Bankr. P. 9019 for Entry of an Order Approving the*

*Terms of Settlement by and Between Agera and Boston Gas Company and/or Colonial Gas*

*Company* (the "Motion").  A hearing (the "Hearing") on the Motion will be held before the

Honorable Robert D. Drain, United States Bankruptcy Judge, in the United States Bankruptcy

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Agera Energy LLC (8122); Agera Holdings, LLC (3335); energy.me midwest llc (9484); Aequitas Energy, Inc. (7988); Utility Recovery LLC (4351); and Agera Solutions LLC (8749).  The location of the Debtors' corporate headquarters and the service address for all Debtors is 555 Pleasantville Road, S-107, Briarcliff Manor, NY 10510.

Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York

10601, on **March 23, 2020 at 2:00 p.m. (Prevailing Eastern Time).**

     **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must

comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules, and be

filed with the Bankruptcy Court (a) by attorneys practicing in the bankruptcy court, including

attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which

can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM,

in text searchable portable document format (PDF) (with a hard copy delivered directly to

Chambers), in accordance with the customary practices of the Bankruptcy Court and General

Order M-399, to the extent applicable, and served in accordance with the *Order (A) Establishing*

*Certain Notice, Case Management, and Administrative Procedures and (B) Granting Related*

*Relief* [Docket No. 96] (the "Case Management Procedures Order").  Objections, if any, to the

Motion shall be filed and served, with a copy to the Court's chambers, in a manner consistent with

the Case Management Procedures Order by **March 16, 2020 at 4:00 p.m. (Prevailing Eastern**

**Time)** (the "Objection Deadline").

     **PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and served

with respect to the Motion, the Debtors shall, on or after the Objection Deadline, submit to the

Court an order substantially in the form as **Exhibit A** to the Motion, which order the Court may

enter with no further notice or opportunity to be heard.

     **PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned

thereafter from time to time without further notice other than an announcement of the adjourned

date or dates at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free

of charge by visiting the website of Stretto at http://cases.stretto.com/agera.  You may also obtain

copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

Dated:  March 2, 2020
       New York, NY

MCDERMOTT WILL & EMERY LLP

/s/ Darren Azman
Timothy W. Walsh
Darren Azman
Ravi Vohra
340 Madison Avenue
New York, NY 10173
Telephone:  (212) 547-5615
Facsimile:  (212) 547-5444
Email: dazman@mwe.com
      rvohra@mwe.com

*Counsel to the Debtors*
*and Debtors in Possession*

**Hearing Date: March 23, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: March 16, at 4:00 p.m. (prevailing Eastern Time)**

**MCDERMOTT WILL & EMERY LLP**
Timothy W. Walsh
Darren Azman
Ravi Vohra
340 Madison Avenue
New York, New York 10173
Telephone: (212) 547-5615
Facsimile:  (212) 547-5444

*Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AGERA ENERGY LLC, *et al.*,[1] | ) | Case No. 19-23802 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY
CODE AND FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER APPROVING THE
TERMS OF SETTLEMENT BY AND BETWEEN AGERA AND BOSTON GAS
COMPANY AND/OR COLONIAL GAS COMPANY**

Agera Energy LLC ("Agera") and the above-captioned debtors, as debtors and debtors in

possession (collectively, the "Debtors") in these chapter 11 cases (these "Chapter 11 Cases"),

hereby submit this motion (this "Motion") for entry of an order (the "Proposed Order") pursuant

to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019(b)

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), substantially in the

form attached hereto as **Exhibit A** (the "Proposed Order"), approving the terms of that certain

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Agera
Energy LLC (8122); Agera Holdings, LLC (3335); energy.me midwest llc (9484); Aequitas Energy, Inc. (7988);
Utility Recovery LLC (4351); and Agera Solutions LLC (8749).  The location of the Debtors' corporate
headquarters and the service address for all Debtors is 555 Pleasantville Road, S-107, Briarcliff Manor, NY 10510.

settlement agreement (the "Settlement Agreement"), attached as **Exhibit 1** to the Proposed

Order, between Agera and Boston Gas Company and/or Colonial Gas Company, both d/b/a

National Grid, a Massachusetts Corporation (collectively, "National Grid" and together with

Agera, the "Settlement Parties"). In support of this Motion, the Debtors respectfully state as

follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of New York (the

"Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference from the United States District Court for the Southern*

*District of New York*, dated January 31, 2012.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are Bankruptcy Code section

1121(d) and Bankruptcy Rule 9006.

## BACKGROUND

4.      On October 4, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.      On October 11, 2019, the United States Trustee for the Southern District of New

York (the "U.S. Trustee") appointed an official committee of unsecured creditors (the

"Committee") pursuant to Bankruptcy Code section 1102 [Docket No. 61].  No trustee,

examiner, or other official committee has been appointed in these Chapter 11 Cases.

DM_US 166111432-2.108028.0011

7.      The factual background regarding the Debtors, including a description of the

Debtors' business, capital structure, and the circumstances leading to these Chapter 11 Cases, is

set forth in the *Declaration of Todd Sandford Pursuant to Rule 1007-2 of the Local Bankruptcy*

*Rules for the Southern District of New York in Support of the Debtors' Chapter 11 Petitions and*

*First Day Pleadings* [Docket No. 3], which is incorporated herein by reference.

## RELEVANT BACKGROUND

8.      National Grid is an electricity and natural gas delivery company that supplies

energy to a large number of consumers in the northeastern United States.

9.      Prior to the Petition Date, the Settlement Parties were party to that certain *Gas*

*Supplier Service Agreement* (the "Agreement") under which Agera agreed to, among other

things, supply natural gas to National Grid for distribution to Agera's customers using National

Grid's distribution system. Under the Agreement, National Grid agreed to process and collect

customer payments, and remit a portion of same to Agera.

10.      In February 2019, National Grid became aware of a billing system error that

resulted in significant underbilling of certain of Agera's customers (the "Billing Errors").

National Grid acknowledged the Billing Errors in its *Application of Boston Gas Company,*

*Colonial Gas Company, Keyspan Energy Delivery Long Island, Keyspan Energy New York,*

*Narragansett Electric Company, Niagara Mohawk Power Corporation, Massachusetts Electric*

*Company and Nantucket Electric Company for Allowance and Payment of Administrative*

*Expenses* [Docket No. 345].

3

11.     Specifically, the Billing Errors resulted in reduced gas commodity prices being charged to Agera's customers for certain natural gas deliveries, thereby reducing the amount remitted to Agera for those deliveries.

12.     On August 2, 2019, Agera sent National Grid that certain *Notice of Billing Dispute – National Grid MA and Agera Energy LLC* in which Agera stated that it had identified a number of Billing Errors that it believed resulted in at least $64,582 worth of losses to Agera.

13.     On December 20, 2019, National Grid sent Agera a letter stating that National Grid had investigated the Billing Errors, determined that Agera's customers had been undercharged, and proposed to compensate Agera in the amount of $57,823.44, provided that Agera executed a form release provided by National Grid.

14.     On January 6, 2020, Agera requested additional information from National Grid, which information was received on January 28, 2020. Based on this information and Agera's internal records review, on February 4, 2020, Agera proposed that National Grid compensate the Debtors in the amount of $74,493.93.

15.     Although National Grid does not dispute that the Billing Errors occurred, National Grid could dispute the amount of damages suffered by Agera as a result of the Billing Errors. Thus, the Debtors believe that the Settlement Agreement is in the best interest of all creditors. To that end, on February 10, 2020, the Settlement Parties agreed, subject to Bankruptcy Court approval, to settle Agera's claims for $74,493.93 in exchange for the release.

16.     Subsequent negotiations between the Settlement Parties concerned the scope of the release. From February 10, 2020 to the date hereof, the Settlement Parties negotiated the

4

current form of the release, narrowing substantially the scope of the released claims and

substantially increasing the specificity of the release.

17.     The Settlement Agreement provides in pertinent part for a $74,439.93 payment

from National Grid to Agera in full satisfaction of Agera's claims against National Grid arising

from the Billing Errors in return for the execution of the release. The Debtors respectfully submit

that the Settlement Agreement is fair and equitable, in the best interests of the Debtors' estates

and represents a sound exercise of the Debtors' business judgment.

## RELIEF REQUESTED

18.     By this Motion, the Debtors request that the Court enter an Order approving the

Settlement pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019.

## BASIS FOR RELIEF

19.     Bankruptcy Code Section 105(a) provides that "[t]he court may issue any order …

that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the

court may approve a compromise and settlement." Fed. R. Bankr. P. 9019. This rule empowers

Bankruptcy Courts to approve settlements "if they are in the best interests of the estate." *Vaughn

v. Drexel Burnham Lambert Grp., Inc.* (*In re Drexel Burnham Lambert Grp., Inc.*), 134 B.R.

499, 505 (Bankr. S.D.N.Y. 1991); *see also Fisher v. Pereira (In re 47-49 Charles St., Inc.)*, 209

B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 146 B.R. 414, 426 (S.D.N.Y.

1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). Although there is some dispute over whether parties to

a case arising under the Bankruptcy Code are required to seek court approval for all settlements

and compromises, the majority position, and the position adopted in the Southern District of New

York, is that such approval is necessary. *Salim v. Nisselson (In re Big Apple Volkswagen, LLC)*, 571 B.R. 43, 54 (Bankr. S.D.N.Y. 2017) ("To the extent that there is any uncertainty regarding the scope of Rule 9019(a), the Court agrees with the majority view that a compromise or settlement is enforceable only if the bankruptcy court has approved it); *In re Leslie Fay Cos.*, 168 B.R. 294, 305 (Bankr. S.D.N.Y. 1994) ("Compromises may not be made in bankruptcy absent notice and a hearing and a court order."); *cf In re Telesphere Communications*, 179 B.R. 544, 551 (Bankr. N.D. Ill. 1994) ("the Bankruptcy Code contains no requirement for judicial approval of settlements.").

20.    Compromises and settlements are looked upon favorably in bankruptcy cases because they "minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *Motors Liquidation Co.*, 555 B.R. 355, 364-65 (Bankr. S.D.N.Y. 2016) (citing *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); 10 *Collier on Bankruptcy* ¶ 9019.01 (16th ed. 2017) ("Compromises are favored in bankruptcy.").

21.    "The decision to approve a particular compromise lies within the sound discretion of the Court." *In re NII Holdings*, 536 B.R. 61, 98 (Bankr. S.D.N.Y. 2015) (citing *Nellis v. Shugrue*, 165 B.R. 115, 123 (Bankr. S.D.N.Y. 1994)). A proposed compromise and settlement implicates the issue of whether it is "fair and equitable" and "in the best interest of the [debtor's] estate." *In re A&C Properties*, 784 F.2d at 1381. The Court must apprise itself "of all relevant facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *TMT Trailer Ferry*, 390 U.S. at 424.

6

22.    Although a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *TMT Trailer Ferry*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" on the merits of the claims being settled, *Port O'Call Invest. Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976), or conduct a full, independent investigation. *Drexel*, 134 B.R. at 496.

23.    To be approved, "[t]he settlement need not be the best that the debtor could have obtained." *In re Adelphia Comm. Corp.,* 368 B.R. 140, 225 (Bankr. S.D.N.Y. 2015). Instead, the standard courts apply for approval of settlements under Bankruptcy Rule 9019 is deferential to the debtor's judgment and merely requires the Court to ensure that the settlement does not fall below the "lowest point in the range of reasonableness in terms of benefits to the debtor." *See Allied Waste Serves. Of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 92 ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness. … If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to some deference."). Furthermore, a court may "take into account the debtor's business judgment in recommending a settlement as well as the opinions of the debtor and the parties to the settlement." *In re NII Holdings*, 536 B.R. at 100.

24.    Guided by *TMT Trailer Ferry*, courts in the Second Circuit looking to determine reasonableness evaluate:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affect class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the

7

proposed settlement;" (4) whether other parties in interests support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors;" and (7) "the extent to which the settlement is the product of arm's length bargaining.

*Motorola v. Committee of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (the "*Iridium* Factors").

25.     The Settlement contemplated herein is no more than a routine resolution of disputed claims. No novel or innovative mechanisms are proposed or required to faithfully carry out the terms of the Settlement Agreement. No such mechanics are necessary because the Settlement Agreement calls for nothing more than the release of claims by one party in exchange for payment by the other. Similar settlements are routinely approved. *See e.g., In re Cocoa Services, L.L.C.*, Case No. 17-11936 (JLG) [Docket No. 280] (Bankr. S.D.N.Y. November 30, 2018) (approving settlement of civil dispute in return for an allowed general unsecured claim); *In re SunEdison, Inc*, Case No. 16-10992 (SMB) [Docket No. 4363] (Bankr. S.D.N.Y. November 27, 2017) (approving settlement in return for one-time payment) *In re AVAYA Inc,* Case No. 17-10089 (SMB) [Docket No. 1351] (Bankr. S.D.N.Y. October 16, 2017) (approving settlement in return for an allowed general unsecured claim).

26.     The *Iridium* Factors. "When courts in this Circuit consider whether a settlement is within the range of reasonableness, they apply the [*Iridium* Factors]". *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 258. *Iridium* Factor No. 3, which implicates the interests of creditors, is neutral because no creditor other than National Grid has voiced support or opposition to the Settlement. *In re Cinque Terre Fin. Grp., Ltd*., 2017 Bankr. LEXIS 3686, at *38 (Bankr. S.D.N.Y. 2017) (finding that when "there is both support for, and opposition to, the Settlement

8

Agreement," this factor is "neutral, if not irrelevant."). To the extent that National Grid asserts a claim against the Debtor and is therefore a creditor, National Grid as the offeror of the Settlement Agreement clearly supports it.

27.    Similarly, *Iridium* Factor No. 4 "is not relevant … since no parties in interest … have taken a position on the Motion," aside from the Settlement Parties. *Id*. *Iridium* Factor No. 6 is similarly irrelevant because no release benefiting the officers and directors of the Debtors is contemplated by the Settlement. This leaves *Iridium* Factors Nos. 1, 2, 5, and 7 to be considered.

28.    "In applying *Iridium* Factors No. 1 and No. 2, the Court must balance the litigation risks, including attendant costs, delays, and collection risks (if the litigation is successful), against the benefits to the parties if the settlement is approved." *Id*. Although the Debtors do not contend that collection will be unduly challenging in the event that the Debtors prevail in asserting their claims against National Grid, there is no question that substantial costs must be incurred to do so, not the least of which are time and legal fees.

29.    Furthermore, even assuming the Debtors prevail in all aspects, the benefit to the Debtors, and ultimately the Debtors' estates, may not be substantially more favorable than the result offered by the Settlement Agreement. Namely, the Debtors at this time believe that they may recover $74,493.93 from National Grid. The Settlement Agreement provides for the full satisfaction of the face value that the Debtors believe their claim is worth at this time. This means that the Debtors could potentially be made whole without taking into account additional legal fees and potential delays that would necessarily be expended in successfully prosecuting any claims the Debtors may have in relation to the Billing Errors.

9

30.     As such, taking into account the attorney's fees and the time value of money, the Settlement almost certainly represents a net positive to the Debtors, their estates and ultimately, their creditors. Therefore, there should be no question that *Iridium* Factors Nos. 1 and 2 strongly favor the approval of the Settlement.

31.     Furthermore, "[i]n evaluating the merits of the Motion, and particularly the application of *Iridium* Factors Nos. 1 and 2 to the Settlement Agreement, the Court may rely on the opinions of the Debtor, the parties to the settlement, and the professionals, in evaluating the necessary facts, and it should factor in the debtor's exercise of its business judgment in recommending the settlement." *Id*. at *41 (internal citations omitted). It is self-evident that by agreeing to the Settlement, the Settlement Parties believe that the Settlement is fair and favorable. This belief is a sound exercise of the Debtors' business judgment, formed after negotiations with National Grid and the Debtors' various advisors. Given the uncontroverted reasonableness of the Debtors' business judgment, the Court may "give weight to the Debtors' opinion that the settlement is fair and equitable," if it so chooses. *Id*. The Debtors respectfully submit that an exercise of discretion in this manner is warranted for purposes of this Motion.

32.     Regarding *Iridium* Factor No. 5, implicating the competence and experience of the bankruptcy counsel for the various parties in interest, the Debtors respectfully submit that the parties do not dispute this factor. The Debtors are represented by the undersigned counsel, who have substantial experience representing clients in large-scale, high-stakes and complex bankruptcy filings. National Grid is represented by their in-house counsel, with input from their internal commercial teams, who have substantial experience in the commercial energy sector.

10

The depth and experience of counsel representing the Settlement Parties should belie any substantial suggestion of inexperience or incompetence.

33.      Finally, *Iridium* Factor No. 7 implicating "the extent to which the settlement is the product of arm's length bargaining," *Iridium*, 478 F.3d at 462, is similarly not in dispute. The negotiations that led up to the Settlement Agreement, while not overtly hostile, were nonetheless hard fought and necessitated the resolution of multiple issues, in particular regarding the releases contemplated by the Settlement Agreement. As such, it is clear that the Settlement Agreement was produced only through contentious, arm's length negotiations between the Settlement Parties.

## MOTION PRACTICE

34.      This motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this motion. Accordingly, the Debtors submit that this motion satisfies Local Rule 9013-1(a).

## NOTICE

35.      The Debtors will provide notice of this Motion to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to BP Energy Company; (d) counsel to Exelon Generation Company, LLC; (e) the Internal Revenue Service; (f) the United States Attorney for the Southern District of New York; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

36.       No prior motion for the relief requested herein has been made to or any other Court.

WHEREFORE, the Debtors respectfully requests that the Court enter the order granting

the relief requested herein and such other relief as the Court deems appropriate under the

circumstances.

Dated: March 2, 2020                          Respectfully submitted,
        New York, NY

                                              MCDERMOTT WILL & EMERY LLP

                                              /s/ Darren Azman
                                              Timothy W. Walsh
                                              Darren Azman
                                              Ravi Vohra
                                              340 Madison Avenue
                                              New York, NY 10173
                                              Telephone:  (212) 547-5615
                                              Facsimile:  (212) 547-5444
                                              Email: dazman@mwe.com
                                                      rvohra@mwe.com

                                              *Counsel to the Debtors and*
                                              *Debtors in Possession*

12

**Exhibit A**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AGERA ENERGY LLC, *et al.*,[1] | ) | Case No. 19-23802 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER APPROVING THE TERMS OF SETTLEMENT BY AND BETWEEN AGERA AND BOSTON GAS COMPANY AND/OR COLONIAL GAS COMPANY PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND FED. R. BANKR. P. 9019

Upon consideration of the *Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and Fed. R. Bankr. P. 9019 for Entry of an Order Approving the Terms of the Settlement By and Between Agera and Boston Gas Company and/or Colonial Gas Company, and Granting Related Relief* (the "Motion"), submitted by Agera Energy LLC ("Agera") and the above-captioned debtors, as debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the terms of that certain settlement agreement (the "Settlement Agreement"), attached as **Exhibit 1** to the this Order, between Agera and Boston Gas Company and/or Colonial Gas Company, both d/b/a National Grid, a Massachusetts corporation (collectively, "National Grid" and together with Agera, the "Settlement Parties"); and the Court finding that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the *Amended Standing Order of Reference to Bankruptcy Judges of the District Court for the*

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Agera Energy LLC (8122); Agera Holdings, LLC (3335); energy.me midwest llc (9484); Aequitas Energy, Inc. (7988); Utility Recovery LLC (4351); and Agera Solutions LLC (8749).  The location of the Debtors' corporate headquarters and the service address for all Debtors is 555 Pleasantville Road, S-107, Briarcliff Manor, NY 10510.

*Southern District of New York*, dated January 31, 2012; and this Court having found that venue

of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and the Court further finding that adequate and appropriate notice of the Motion and

the hearing on the Motion has been given, and that no other or further notice is required; and the

Court further finding that good and sufficient cause exists for granting the relief requested in the

motion; it is hereby ORDERED that:

    1.      The Motion is GRANTED in its entirety;

    2.      The Settlement Agreement is approved pursuant to Bankruptcy Code section

105(a) and Bankruptcy Rule 9019(b); and

    3.      The Debtors are authorized and empowered to take such actions as may be

reasonably necessary to implement and effectuate the terms of the Settlement Agreement.

Dated: _____, 2020
      White Plains, New York        _____
                           THE HONORABLE ROBERT D. DRAIN
                           UNITED STATES BANKRUPTCY JUDGE

DM_US 166111432-2.108028.0011

## **Exhibit 1**

Settlement Agreement

**RELEASE**

In consideration of the payment of Seventy Four Thousand, Four Hundred, Thirty

Nine Dollars and 93/100 ($74,439.93), the receipt of which is hereby acknowledged, Agera

Energy whose address is 555 Pleasantville Road, Ste-107S, Briarcliff Manor, NY   10510

("Agera"), for itself and its parent, affiliates, and each of its and their agents, employees,

officers, directors, attorneys, successors, trustees and assigns, does hereby remise, release

and forever discharge Boston Gas Company and/or Colonial Gas Company, each d/b/a

National Grid, a Massachusetts Corporation ("National Grid"), its parent, affiliates, and each

of its and their agents, employees, officers, directors, attorneys, successors, trustees and

assigns of and from all claims, debts, demands, actions, causes of action, suits, damages and

liabilities, including but not limited to claims in law, in equity, and under statute or

regulation, that Agera had, now has, or may have in the future based on any actions taken or

not taken up to and including the date of this Release, against National Grid, whether known

or unknown, or whether asserted, to the extent arising from the Billing Error defined below,

that resulted in incorrect gas commodity prices being charged to certain gas supply

customers of Agera, and Agera further covenants not to sue or cooperate with any other

person or entity in asserting such claims against National Grid.  For purposes of this release,

"Billing Error" is defined herein as the billing error by National Grid, which has since been

remedied, related to how National Grid processed inbound ESCO price change transactions

causing delays in implementing the ESCO's requested price by the date that was returned in

the EDI response transaction.

IN WITNESS WHEREOF, Agera Energy has caused this Release to be executed as

of the__ day of _____ 20__, by its duly authorized officer.  This Release is intended to take

effect as a sealed instrument under the laws of the Commonwealth of Massachusetts.


By  _____

Print Name_____

Title_____